UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM KRANSON,<br><br>           Plaintiff,<br><br>     vs.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>           Defendant. | Case No.: 11-cv-05826-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT (DKT. NO. 26); AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT (DKT. NO. 39)** |

Pending before the Court are two summary judgment motions.  Plaintiff Tim Kranson ("Plaintiff") filed this disability discrimination action against Defendant Federal Express Corporation ("Defendant" or "FedEx") in state court on October 28, 2011.  Plaintiff alleges nine claims against FedEx: (1) disability discrimination under the Fair Employment and Housing Act ("FEHA"); (2) failure to provide reasonable accommodation; (3) failure to engage in the interactive process; (4) violation of the California Family Rights Act ("CFRA"); (5) retaliation; (6) failure to prevent discrimination; (7) wrongful termination in violation of public policy; (8) violation of Business and Professions Code section 17200, *et seq.* ("UCL"); and (9) declaratory relief.  (Dkt. No. 1 ("Compl.").) Plaintiff seeks a determination of whether FedEx's medical leave policy constitutes an unfair business practice under the UCL, and a judicial declaration that the FedEx Policy violates FEHA.  (Compl. at Prayer for Relief  ¶ 5.)  Plaintiff also seeks exemplary and punitive damages.  (Compl. at Prayer for Relief ¶ 3.)

Defendant filed a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment on July 24, 2012.  (Dkt. Nos. 26 & 27 ("Motion" or "Mot.").)  On August 21, 2012, Plaintiff filed his Opposition to Motion for Summary Judgment, or in the Alternative, Partial

Summary Judgment, and Cross Motion for Summary Judgment, or in the Alternative, Partial

Summary Judgment.  (Dkt. No. 39 ("Opposition" or "Cross-Motion").)  Defendant filed its reply to

Plaintiff's Opposition and opposition to Plaintiff's Cross-Motion on September 4, 2012.  (Dkt. No. 47

("Reply").)  On September 18, 2012, the Court held oral argument on the Motion and Cross-Motion.

(Dkt. No. 79.)

Having carefully considered the papers submitted and the pleadings in this action, the

arguments of counsel, and for the reasons set forth below, the Court hereby:

- **DENIES** Defendant's Motion for Summary Judgment as to the claims for disability

  discrimination, failure to provide reasonable accommodation, failure to engage in the

  interactive process, retaliation, failure to prevent discrimination, wrongful termination

  in violation of public policy, violation of UCL, and declaratory relief (first, second,

  third, fifth, sixth, seventh, eighth, and ninth claims, respectively);

- **GRANTS** Defendant's Motion for Summary Judgment as to the fourth claim for

  violation of the CFRA; and

- **DENIES** Plaintiff's Cross-Motion for Summary Judgment in its entirety.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff worked as a full-time Ramp Agent at the Oakland Airport facility of FedEx at the

time of his injury on February 2, 2011.  (RSS[1] No. 6.)  On that date, Plaintiff suffered a crushing and

degloving injury to toes on his left foot and a ruptured tendon to his right elbow.  (RSS No. 8.)

FedEx policy 1-8, entitled Leave of Absence (Medical) – Merit Hourly ("Policy 1-8"),

provides employees with up to 90 days of medical leave of absence.  (RSS No. 11.)  It also provides

that after the exhaustion of Family and Medical Leave Act ("FMLA")/CFRA leave[2] and the 90 days

of medical leave under Policy 1-8, FedEx may replace the position of the employee on leave or allow

the position to remain unfilled.  (*Id.*)  From February 2–8, 2011, Plaintiff was on paid medical leave

---

[1] "RSS" refers to the Reply Separate Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, and in Opposition to Plaintiff's Cross-Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment.  (Dkt. No. 48.) Unless otherwise noted, the references to the material fact nos. include the evidence supporting the same.

[2] The CFRA (Cal. Gov't Code section 12945.1, *et seq.*) closely parallels the provisions of the FMLA (29 U.S.C. section 2601, *et seq.*).

United States District Court

Northern District of California

of absence, pursuant to FedEx policy 1-7 (Medical Absence Pay Period).  (RSS No. 12.)  Although the policy permits it, as a matter of practice FedEx does not count the first 40 work hours (7 days) of medical leave under this policy against an employee's FMLA/CFRA leave, or leave pursuant to Policy 1-8.  (*Id.*)

Kathleen Cline ("Cline") is the Human Capital Management Program ("HCMP") Advisor at FedEx.  (RSS No. 10.)  Cline oversees employees who are out on medical leaves and facilitates requested disability accommodations.  FedEx uses Sedgwick CMS ("Sedgwick") as a third-party administrator of workers' compensation claims.  (RSS No. 19.)  Sedgwick arranged with another company, Intracorp, to have its employee, nurse Karen Plumb ("Nurse Plumb"), attend and monitor Plaintiff's medical visits with his treating physician, Jack H. Stehr, M.D. ("Dr. Stehr").  (RSS Nos. 18 & 19.)  Dr. Stehr is a Board Certified orthopedic surgeon and a qualified medical examiner for workers' compensation claims.  (RSS No. 18.)  Nurse Plumb would keep Cline aware of Plaintiff's work/disability status following his medical visits with Dr. Stehr.  (RSS No. 19.)

On February 8, 2011, Nurse Plumb advised Cline that Plaintiff was temporarily totally disabled from work.  (RSS No. 20.)  Plaintiff's 84 days of FMLA and CFRA leave *and* 90 days of medical leave under Policy 1-8 began to run on February 9, 2011.  (RSS Nos. 13 & 14.)  During this time, Kranson retained the right to return to his position as a full-time Ramp Agent.  (*Id.*)

By letter on February 9, 2011, Cline sent Plaintiff a letter that stated:

> We will hold a position open for you for at least ninety (90) calendar days and the exhaustion of any eligible FMLA entitlement.  If you are unable to return to work within this period of time, we may need to replace you in your position in order to maintain service to our customers.  If your position is replaced, you will report to the District HCMP Advisor and your work location will be charged to the District Office for administrative purposes until you are released to return to work full duty.  If your position is no longer available, and you are then released to return to work (other than TRW), you will be given opportunity to submit unlimited JCA's, for a 90 calendar day period or the remainder of your medical leave, whichever is less, and receive preferential placement for lateral or lower level positions for which you are qualified to perform with or without reasonable accommodation.  If you have not accepted a job by the expiration of this period, your employment will be terminated.

1 (RSS No. 16; Kranson Dep., Ex 12.)[3]  On February 17, 2011, Plaintiff called Cline to give her an

2 update of his medical condition.  (RSS No. 17.)

3          On March 3, 2011, Plaintiff called Cline to inform her that he had seen Dr. Stehr, and that he

4 was doing well.  (RSS No. 62.)  He informed her that he was hopeful to get his cast off later that

5 month and that his toes were doing well.  (*Id.*)  In late March or early April 2011, Plaintiff called his

6 manager, Operations Manager Reginald Wright ("Wright"), to inquire about his position and to make

7 sure it would be available to him when he was released to return to work.  (RSS Nos. 7 & 63.)  Wright

8 informed Plaintiff not to worry about his position and told him "you're not going anywhere."  (RSS

9 No. 64.)

10          On May 4, 2011, Plaintiff exhausted his FMLA/CFRA leave.  (RSS No. 15.)  On May 9, 2011,

11 Plaintiff had an appointment with Dr. Stehr, which Nurse Plumb and Plaintiff's wife attended ("May

12 9th Appointment").  (*See* RSS No. 22.)  Plaintiff and his wife recall that at this appointment, Dr. Stehr

13 asked Nurse Plumb whether a modified work schedule was available for Plaintiff.  (Kranson Dep.

14 68:7–17 & 68:23–69:7; Plaintiff Tim Kranson's Declaration in Support of Plaintiff's Opposition to

15 Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion (Dkt. No. 42 ("T. Kranson

16 Decl.")) ¶ 17; Jacqueline Kranson's Declaration in Support of Plaintiff's Opposition to Motion for

17 Summary Judgment and in Support of Plaintiff's Cross-Motion (Dkt. No. 41) ¶ 2.)  Dr. Stehr does not

18 recall any conversation at the May 9th Appointment regarding modified, restricted, or light-duty

19 (RSS No. 22), but testified that he routinely asks because of the pressures to return employees to

20 work.  Nurse Plumb denies that Dr. Stehr asked her any question regarding modified work schedule or

21 modified work duty.  (Declaration of Karen Plumb, R.N. in Support of Defendant's Opposition to

22 Plaintiff's Cross-Motion (Dkt. No. 51) ¶ 4.)  Also on May 9, 2011, Nurse Plumb reported to Cline that

23

24 _____

25 [3] The parties have separately attached excerpts of Plaintiff's deposition transcripts in support of their briefs.
(Declaration of Charles W. Matheis Jr. and Notice of Lodgment of Exhibits in Support of Defendant Federal

26 Express Corporations Motion for Summary Judgment ("Matheis Decl." (Dkt. No. 29)) at Ex. A (Dkt. No. 29-1); *see* Declaration of P. Bobby Shukla in Support of Plaintiff's Opposition to Motion for Summary Judgment

27 and in Support of Plaintiff's Cross Motion for Summary Judgment ("Shukla Decl." (Dkt. No. 39-1) at Ex. A (Dkt. No. 39-2); *see also* Declaration of Charles W. Matheis Jr. No. 2 ("Matheis Reply Decl." (Dkt. No. 49)) at

28 Ex. H (Dkt. No. 49-1).  For ease of reference in this Order, the Court will refer to Plaintiff's deposition transcripts as "Kranson Dep. page:line" or "Kranson Dep., Ex. #."

United States District Court
Northern District of California

Plaintiff remained off work; Cline interpreted this to mean he remained temporarily totally disabled from work.  (RSS No. 21.)

Plaintiff exhausted his leave pursuant to Policy 1-8 on May 10, 2011.  (RSS No. 15.)  By letter dated May 19, 2011, FedEx advised Plaintiff that in "order to maintain operational efficiency and service to [its] customers, it [might] be necessary" to eliminate his position and wished him a "speedy recovery" so he could "return to work in the near future."  (*See* RSS No. 29; Kranson Dep., Ex. 14.) Plaintiff acknowledged his understanding of the possibility of the elimination of his job on May 23, 2011.  (RSS No. 29.)  Some time after May 19, 2011, Plaintiff contacted Cline, who told him that he would be placed on personal leave of absence for 90 days and would have to look for a lateral position or accept a lower paying position, such as a part-time job.  (RSS No. 113.)  Plaintiff told Cline he could not live on part-time work.  (*Id.*)

On June 6, 2011, Dr. Stehr released Plaintiff to return to work beginning June 13, 2011.  (RSS No. 37.)  The release was to return to full duty, without restrictions.  (*Id.*)  Plaintiff agrees that as of June 13, he had no need for an accommodation at work.  (*Id.*)  On the day of the June 6 appointment, Plaintiff called Cline to inform her of the release.  (RSS No. 110.)  Plaintiff also called Wright and learned that FedEx was not hiring any more Ramp Agents at the Oakland facility because they had too many Ramp Agents.  (RSS Nos. 30 & 110.)  Plaintiff had no reason to disbelieve the statement from Wright.  (RSS No. 30.)

On June 10, 2011, Cline informed Plaintiff by letter that he was being placed on a 90-day personal leave, during which he could apply for other FedEx jobs for which he was qualified. Plaintiff was advised that if he had not found another position after the 90 days expired, he would be terminated from employment with FedEx.  (RSS No. 38.)  Plaintiff acknowledged his understanding of the information and requirements on June 13, 2011.  (*Id.*)  He also acknowledged that he was unwilling to relocate for another FedEx position.  (RSS Nos. 38 & 39.)

During Plaintiff's 90-day personal leave/job-search, the only jobs available for which he was qualified were part-time jobs.  (RSS No. 41.)  Plaintiff does not dispute that FedEx sent him job notices for out-of-state or part-time positions.  (RSS No. 116.)  At least one job opportunity for a part-time job came to Plaintiff from FedEx in the form of an offer.  (RSS No. 118.)  Plaintiff would not

1   have applied to available part-time Ramp Agent positions at the Oakland facility, had any been

2   available to him.  (*See* RSS Nos. 42 & 43.)

3          On October 20, 2011, Plaintiff was terminated from his employment with FedEx for being

4   unable to return to work from his medical leave of absence, consistent with Policy 1-8.  (RSS No. 44.)

5   Plaintiff filed a Complaint of Discrimination with the California Department of Fair Employment and

6   Housing on August 5, 2011.  (RSS No. 45.)

7          Defendant moves for summary judgment on all nine claims.  Plaintiff opposes summary

8   judgment on all claims except for the CFRA claim, to which Plaintiff agrees summary judgment for

9   Defendant is proper.  (Opp. at 2.)  Plaintiff cross-moves for partial summary judgment on liability in

10  the claims for: (1) disability discrimination; (2) failure to provide reasonable accommodation; (3)

11  failure to engage in interactive process; (5) retaliation; (6) failure to prevent discrimination; (7)

12  wrongful termination; and (8) violation of UCL.  Plaintiff requests full summary judgment on the

13  ninth claim for declaratory relief.  (Opp. at 20.)

## II.   DISCUSSION

### A.   Legal Standard for Motion for Summary Judgment Under Fed. R. Civ. P. 56

16         Summary judgment is appropriate when there is no genuine dispute as to any material fact and

17  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A party seeking

18  summary judgment bears the initial burden of informing the court of the basis for its motion, and of

19  identifying those portions of the pleadings, depositions, discovery responses, and affidavits that

20  demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

21  323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty*

22  *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The "mere existence of *some* alleged factual dispute between

23  the parties will not defeat an otherwise properly supported motion for summary judgment; the

24  requirement is that there be no *genuine* issue of *material* fact."  *Id.* at 247–48 (dispute as to a material

25  fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-

26  moving party).

27         Where the moving party will have the burden of proof at trial, it must affirmatively

28  demonstrate that no reasonable trier of fact could find other than for the moving party.  *Soremekun v.*

United States District Court

Northern District of California

*Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where the non-moving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that the non-moving party lacks evidence to support its case.  *Id.*  If the moving party meets its initial burden, the opposing party must then set out "specific facts" showing a genuine issue for trial in order to defeat the motion.  *Id.* (quoting *Anderson*, 477 U.S. at 250).  The opposing party's evidence must be more than "merely colorable" but must be "significantly probative."  *Id.* at 249–50.  Further, that party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows a genuine issue of material fact exists for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000); *Nelson v. Pima Cmty. College Dist.*, 83 F.3d 1075, 1081–1082 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute"); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat [defendants'] summary judgment motion").

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255; *Hunt v. City of Los Angeles*, 638 F.3d 703, 709 (9th Cir. 2011).  However, in determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted).  Rather, a court is entitled to "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *See id.*; *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.")

**B.      Disability Discrimination (First Claim)**

       **1.      Legal Standard for Disability Discrimination Claim Under FEHA**

The elements of a prima facie case of disability discrimination are: (1) the plaintiff is disabled under FEHA; (2) the plaintiff can, with or without reasonable accommodation, perform the

United States District Court

Northern District of California

essential functions of his position[4]; and (3) the defendant subjected the plaintiff to an adverse employment action (4) because of the disability. *Avila v. Continental Airlines, Inc.,* 165 Cal. App. 4th 1237, 1246 (Cal. Ct. App. 2008); Cal. Gov't Code § 12940(a). "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a *determinative influence* on the outcome." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610 (1993) (emphasis supplied).

Where there is no direct evidence of discrimination, California courts analyze disability discrimination claims under the three-stage burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 807 (1973). *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354–55 (2000); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996). California courts also look to federal anti-discrimination law as an aid in interpreting analogous state law provisions. *Guz*, 24 Cal. 4th at 354.

If a plaintiff succeeds in establishing a prima facie case (step one), the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action (step two). If the defendant does so, the plaintiff moves to step three to demonstrate that the defendant's articulated reason is a pretext for unlawful discrimination "by either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 658–59 (9th Cir. 2002) (internal quotations and citations omitted); *Godwin v. Hunt Wesson Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

To establish pretext under step three, very little direct evidence of discriminatory motive is required, but if circumstantial evidence is offered, such evidence has to be "specific" and "substantial." *Id.* at 1222; *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 n.6 (9th Cir. 2006) (merely denying the credibility of defendant's proffered reason for the challenged employment

---

[4] The second element is also described as requiring that the plaintiff is a "qualified individual." *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (Cal. Ct. App. 1997). A qualified employee is one "who can perform the essential duties of the employment position with reasonable accommodation." *Green v. State of California*, 42 Cal. 4th 254, 264 (2007). Essential functions are defined as "the fundamental job duties of the employment position the individual with a disability holds or desires." Cal. Gov't Code § 12926(f).

action or relying solely on plaintiff's subjective beliefs that the action was unnecessary are insufficient to show pretext); *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) ("a plaintiff cannot defeat summary judgment simply by making out a prima facie case" to show pretext or "deny[ing] the credibility of the [defendant's] witnesses") (internal citations omitted) (second alteration in original).

### 2.     Summary of Parties' Positions

FedEx contends that Plaintiff cannot establish his prima facie case.  First, he was not qualified to do his job when he was displaced on May 10, 2011.  (Mot. at 11.)  At that time, he could not perform all of the essential functions of a Ramp Agent, namely, he could not lift 75 pounds, as required by the job description.  (*Id.* at 12.)  FedEx further contends he was not qualified because Dr. Stehr had not released him to work on May 10.  Second, Plaintiff was not disabled when he was terminated because he was fully recovered (and needed no accommodation) as of June 13, 2011, and thus needed no accommodation when he was terminated in October 2011.  (Mot. at 13.)  Third, Defendant contends there is no evidence of discriminatory intent in the decision to displace Plaintiff or to terminate him.  (*Id.*)  FedEx emphasizes that Guy Capriulo, Managing Director of Operations of FedEx in Oakland ("Capriulo"), made the decision to displace Plaintiff (*i.e.*, not to replace his position) based on operational necessity.  (*Id.*)

Defendant contends that even if Plaintiff could establish his prima facie case, it had legitimate, non-discriminatory reasons for its employment decisions.  Beginning in approximately 2008, FedEx experienced a significant reduction in the volume of freight at the Oakland facility.  (RSS No. 31.)  The result has been, among other things, a reduction in the number of aircraft to load and unload.  (*Id.*)  With the reduction in aircraft arriving and departing in Oakland, FedEx became overstaffed with Ramp Agents.  (RSS No. 33.)  Accordingly, it was determined to reduce the number of Ramp Agents through attrition, rather than simply laying some of them off, or reducing them to part-time.  (*Id.*)  Any Ramp Agent position vacated, for whatever reason, was not backfilled.  (*Id.*)  FedEx is not presently hiring full-time employees at the Oakland facility, nor has Wright hired a full-time employee the entire time he has been an Operations Manager (*i.e.* since 2005).  (RSS No. 34.)

The Oakland facility has an AM operation, a PM operation and the West Coast Overlay ("WCO") operation.  (RSS No. 35.)  With the reduction in volume, the aircraft for the WCO operation arrive much later.  (*Id.*)  Accordingly, there was no work for the WCO operation Ramp Agents for the first half of their shift.  (*Id.*)  In order to make productive use of those employees, the decision was made to have those Ramp Agents work a split shift, in which they work one-half of their shift as a WCO Ramp Agent and one-half of their shift as a Material Handler supporting either the AM or PM operation.  (*Id.*)

FedEx contends that reducing staffing levels and headcount to save money is a legitimate reason for termination, even where the terminated employee is on disability leave.  As part of FedEx's plan to reduce the number of Ramp Agents *and* consistent with Policy 1-8, Plaintiff was displaced from his Ramp Agent position, which has never been filled because it cannot be justified based on departmental operating requirements.  He was not eliminated, according to FedEx, because of his disability.  (Mot. at 14.)  In fact, the only reason he was terminated was because he failed to obtain another position before October 10, 2011.  (*Id.*)

Plaintiff responds that he can establish a prima facie case.  He asserts that he was entitled to job protection when Dr. Stehr released him and that, at that time, he was capable of performing the essential functions of his job.  (Opp. at 17 & 21.)  Plaintiff also argues that Defendant improperly focuses on his condition at the time of his termination—the proper timeframe to consider is when FedEx failed to reinstate him: "if defendant had accommodated plaintiff before expiration of the 90 days[,] then he would have retained his position. . . . All of plaintiff's damages flow from this event." (Opp. at 17–18.)

As to the issue of discriminatory intent and FedEx's proffered non-discriminatory reasons for its actions, Plaintiff asserts it is sufficient that FedEx based his removal on his inability to return from a medical leave of absence to full duty before the expiration of 90 days.   (Opp. at 18; *id.* at 19 ("He was selected for removal solely because of the leave of absence required by his disability.").)  Plaintiff emphasizes that FedEx does not dispute that he would have retained his job if he had not been hurt and on medical leave for more than 90 days.  (Opp. at 21.)  Plaintiff believes that he need not prove pretext because FedEx's reason itself is direct evidence of discrimination.  (Opp. at 18.)

United States District Court

Northern District of California

**3.     Triable Issues of Fact Exist on Plaintiff's Disability Discrimination Claim**

As the preliminary matter, the Court notes there are three critical events at issue in this action: (1) May 10, 2011, when Plaintiff's 90-day leave under Policy 1-8 expired and he was displaced; (2) June 13, 2011, when Plaintiff was released to return to work full duty; and (3) October 10, 2011, when FedEx terminated Plaintiff.  While FedEx makes arguments as to how Plaintiff's prima facie elements fail based on various points in time, Plaintiff focuses on the loss of job protection as of May 10, 2011.  However, FedEx seems to concede the relevance of when the decision was made to displace Plaintiff, which occurred in May 2011.  (Mot. at 11; RSS Nos. 29 & 113.)  As such, the Court first considers the facts as of this time.

When Plaintiff was displaced, the parties do not dispute that he was unable to return to full duty work and was either disabled or regarded as disabled by FedEx.  (RSS No. 21.)  It is also undisputed that Plaintiff suffered an adverse employment action when his job was eliminated.[5]  As to the other elements, the Court finds that a triable issue of fact exists regarding whether Plaintiff was able to perform the essential functions of his position, with or without accommodation, as of May 10, and whether FedEx's conduct was "because of" his disability.

During his leave, Plaintiff remained in contact with Cline and provided updates of his condition.  As of March or April 2011, he reported he was making progress.  But when Plaintiff's leave was about to expire, it appears that Cline made no effort to confirm Plaintiff's status despite the fact that his progress, to that point, had been positive.[6]  Numerous courts have held that "[h]olding a job open for a disabled employee who needs time to recuperate or heal is in itself a form of reasonable accommodation and may be all that is required where it appears likely that the employee will be able

---

[5] An adverse employment action must materially affect the "terms, conditions, or privileges of employment." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054 (2005).

[6] While a written job description is evidence of whether a particular function is essential, "other relevant evidence that may be considered in determining the essential functions of a job might include the actual work experience of current or past employees in the job, the amount of time spent performing a function, and the consequences of not requiring that an employee perform a function."  *Dep't of Fair Employment & Housing v. Lucent Technologies, Inc.*, C 07-3747 PJH, 2008 WL 5157710, at *9 (N.D. Cal. Dec. 8, 2008), *aff'd*, 642 F.3d 728 (9th Cir. 2011) (citing Cal. Gov't Code § 12926(f)(2)).  The Court is not persuaded that no triable issue exists over whether Plaintiff was qualified to perform a Ramp Agent's essential duties merely because he could not lift 75 pounds.  (T. Kranson Decl. ¶¶ 3–5.)

United States District Court
Northern District of California

to return to an existing position at some time in the foreseeable future." *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (Cal. Ct. App. 2000). Based on the evidence presented, a reasonable jury could find that—based on what FedEx knew at the time—it was likely that Plaintiff would be able to return to his job in the foreseeable future and that additional time would have been a reasonable accommodation. *See also Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (Cal. Ct. App. 1999) ("[A] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties."); *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001) (leave of absence was reasonable accommodation for plaintiff's disability); *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) (under the Americans with Disabilities Act ("ADA"), "[e]ven an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer").

Plaintiff has also raised a triable issue of fact regarding FedEx's motivations for its conduct. FedEx contends that it was permitted to and did follow Policy 1-8 by eliminating Plaintiff's position as part of its business plan to reduce headcount through attrition. FedEx, however, was not transparent that when his leave began, it had *already decided* that his position would be eliminated if he could not return by the 91st day. (*See* Deposition of Guy Capriulo ("Capriulo Dep.") at 32, attached as Ex. E to Shukla Decl. (Dkt. No. 39-6) ("[T]he decision was never made because of his disability. The decision was made because he was out of that position for 91 days. And, by policy, we can make the decision on whether or not we need to replace it for business demand, or not."); Declaration of Guy Capriulo in Support of Defendant's Motion for Summary Judgment ¶¶ 3–4 (Dkt. No. 30); Motion at 14.) In addition to being informed in writing that his position "may" be eliminated, Plaintiff called his manager (Wright) to make sure his job would be available to him when he was released to return to work, to which Wright told Plaintiff, "you're not going anywhere." (RSS Nos. 63 & 64.) Further, Managing Director Capriulo and Michael Blanchard, Plaintiff's senior manager ("Blanchard"), both testified that if Plaintiff had not been injured or never went on medical leave, he would have kept his job. (RSS Nos. 127 & 128.)

United States District Court

Northern District of California

12

These are specific and substantial facts from which a reasonable jury could find that Plaintiff's disability was a motivating factor in FedEx's decision to eliminate his position. It is possible that FedEx specifically chose to insulate itself from discussions with Plaintiff such that it could strictly follow Policy 1-8 and eliminate his position. It is also possible that FedEx earnestly followed the Policy based on its cost concerns, having no knowledge of Plaintiff's recovery status. Neither party has met the burden on summary judgment and shown that no triable issues exist. *See Norris v. Allied-Sysco Food Services, Inc.*, 948 F. Supp. 1418, 1434 (N.D. Cal. 1996) (where employer stated in writing that the reason it terminated plaintiff was her continuing unavailability for work and reasonable jury could have concluded she was unavailable for work because of her disability, a triable issue existed regarding whether plaintiff's disability was a motivating factor in employer's decision to terminate her).

For the foregoing reasons, the Court **DENIES** the Motion and Cross-Motion on the first claim for disability discrimination.

### C.    Failure to Provide Reasonable Accommodation (Second Claim)

Under FEHA, employers have an affirmative duty to make reasonable accommodations for a known disability of an employee, provided the accommodation does not create an undue hardship to the employer's operations. Cal. Gov't Code § 12940(m). "Where a necessary accommodation is obvious, where the employee requests a specific and available reasonable accommodation that the employer fails to provide, or where an employer participates in a good faith interactive process and identifies a reasonable accommodation but fails to provide it, a plaintiff may sue under section 12940(m)." *Nadaf-Rahrov v. Neiman Marcus Group, Inc.,* 166 Cal. App. 4th 952, 983 (Cal. Ct. App. 2008). To establish a prima facie case for failure to accommodate, a plaintiff must show that: (1) he suffers from a disability covered by FEHA; (2) that he is otherwise qualified to do his job; and (3) that defendant failed to reasonably accommodate his disability. *Jensen,* 85 Cal. App. at 256. An employer's failure to provide reasonable accommodation is a violation of the statute even in the absence of an adverse employment action. *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 442 (Cal. Ct. App. 2007).

FEHA provides examples of what constitutes a "reasonable accommodation." This may include: making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities; job restructuring; part-time or modified work schedules; reassignment to a vacant position; acquisition or modification of equipment or devices; adjustment or modifications of examinations, training materials or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities. *Scotch v. Art Institute of California-Orange County, Inc.*, 173 Cal. App. 4th 986, 1010 (Cal. Ct. App. 2009); *see* Cal. Gov't Code § 12926(o); 2 Cal. Code Regs. § 7293.9(a); 42 U.S.C. § 12111(9). California courts have adopted the Equal Employment Opportunity Commission's interpretative guidance on the ADA, in which a reasonable accommodation means "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Scotch*, 173 Cal. App. 4th at 1010 (citing *Nadaf-Rahrov*, 166 Cal. App. 4th at 975–76).

Defendant's primary argument is that it was not required to protect Plaintiff's job beyond 84 days under CFRA. (Mot. at 9.) Citing *Tomlinson v. Qualcomm, Inc.*, FedEx argues that CFRA does not guarantee reinstatement to the same or comparable position where the employee is terminated as part of a work force reduction. 97 Cal. App. 4th 934, 940 (Cal. Ct. App. 2002). (*See also* Reply at 6–7 (arguing that an employer need not hold a position open indefinitely as an accommodation). Because Plaintiff admits that he did not need an accommodation after June 13, 2011, FedEx focuses its argument on what it was required to do to reasonable accommodate Plaintiff prior to June 13. (Reply at 5.) However, FedEx also points to its multiple offers of available positions (occurring after June 13) as *reasonable* accommodations that it offered Plaintiff. (*Id.* (also identifying Plaintiff's medical leave itself and extensions thereof as reasonable accommodations).)

Plaintiff asserts that FedEx failed to offer a reasonable accommodation by failing to even consider extending his leave of absence beyond the 90 days under Policy 1-8. (Opp. at 7–8.) Plaintiff emphasizes that FedEx has not attempted to argue that keeping his position open would have caused an undue hardship. (*Id.* at 8.)

The Court agrees that a triable issue has been raised regarding whether FedEx failed to reasonably accommodate him. This case distinguishable from *Tomlinson*, where plaintiff was

selected for layoff as part of a company-wide reduction-in-force while on maternity leave.  Here, sufficient evidence exists to raise the inference that FedEx implemented its headcount reduction and specifically chose to eliminate Plaintiff's position through Policy 1-8 *because* he was unable to return from medical leave.  For the same reasons discussed above in Section II.B.3, a reasonably jury could find that, based on what FedEx knew at the time his job-protected leave expired, additional time would have enabled Plaintiff to return to this existing position within a foreseeable period.  *Jensen*, 85 Cal. App. 4th at 263; *Hanson*, 74 Cal. App. 4th at 226.  Triable issues exist regarding whether *either party* had an understanding as to how much additional time Plaintiff would need to recuperate.

The Court **DENIES** the Motion and Cross-Motion on the second claim for failure to provide a reasonable accommodation.

### D.    Failure to Engage in the Interactive Process (Third Claim)

Under FEHA, it is unlawful for an employer "to fail to engage in a timely, good faith, interactive process with an employee to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability."  Cal. Gov't Code § 12940(n).  "[A]n employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the employee is interested in, and qualified for, those positions, if the employer can do so without undue hardship or if the employer offers similar assistance or benefit to other disabled or nondisabled employees or has a policy of offering such assistance or benefit to any other employees."  *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 950–51 (Cal. Ct. App. 1997).  The employer is required to engage in an interactive process even in the case of a "perceived" disability.  *Gelfo v. Lockheed Martin Corp.,* 140 Cal. App. 4th 34, 61–62 (Cal. Ct. App. 2006).

In general, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."  *Spitzer v. The Good Guys, Inc.,* 80 Cal. App. 4th 1376, 1384 (Cal. Ct. App. 2000).  "[I]t is the employee's initial request for an accommodation which triggers the employer's obligation to participate in the interactive process of determining one.  If the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one."  *Id.*

United States District Court
Northern District of California

United States District Court

Northern District of California

1   (quotation and citations omitted); *King*, 152 Cal. App. at 443 (employer cannot be expected to read

2   employee's mind and is ordinarily not liable for an accommodation of which it had no knowledge).

3   While the employee is typically required "to tender a specific request for a necessary accommodation"

4   (*King*, 152 Cal. App. at 443 (quoting *Spitzer*, 80 Cal. App. 4th at 1384)), the burden is not entirely on

5   the employee (*Jensen*, 85 Cal. App. 4th at 261–62).  "The interactive process is at the heart of the

6   ADA's process and essential to accomplishing its goals. . . . Employees do not have at their disposal

7   the extensive information concerning possible alternative positions or possible accommodations

8   which employers have.  Putting the entire burden on the employee to identify a reasonable

9   accommodation risks shutting out many workers simply because they do not have the superior

10  knowledge of the workplace that the employer has." *Jensen*, 85 Cal. App. 4th at 261–62 (quoting

11  *Barnett v. U.S. Air, Inc.*, 228 F.3d 1102, 1113 (9th Cir. 2000)).  To that end, courts have held that

12  "[t]he employee must initiate the process *unless* the disability and resulting limitations are obvious."

13  *Scotch*, 173 Cal. App. 4th at 1013 (emphasis supplied).

14         Plaintiff asserts that FedEx failed to engage in the interactive process on two separate

15  occasions: first, before the expiration of the 90-day leave period "to determine if he could return to

16  work with accommodations" and, second, after that period had expired "to determine if an extended

17  leave of absence would have enabled him to return to work."  (Opp. at 10.)  As to the first claimed

18  failure to engage, Plaintiff asserts that the interactive process was triggered at the May 9th

19  Appointment when Dr. Stehr asked Nurse Plumb whether FedEx offered a "modified work schedule,"

20  to which she "simply responded 'no.'"  (Opp. at 11.)  Plaintiff argues that "as an agent of FedEx,

21  notice to her is notice to FedEx."  (*Id.*)  If Nurse Plumb was not an actual agent of FedEx, Plaintiff

22  argues she was an ostensible agent.  (Opp. at 11–12.)  Even if Nurse Plumb was not an agent at all,

23  Plaintiff nonetheless asserts that triable issues exist regarding FedEx's failure to engage the interactive

24  process by "flatly refusing to consider modified duty" for Plaintiff.  (Opp. at 12–15.)  As to the second

25  claimed failure to engage by FedEx, Plaintiff asserts that Policy 1-8 violates California law and that

26  leave of absence must be a reasonable accommodation as long as the leave does not cause an undue

27  hardship.  (Opp. at 16–17.)  Plaintiff argues that Policy 1-8 effectively requires that an employee be

28  100% healed before returning to work and negates FedEx's duty to accommodate altogether.  (*Id.*)

FedEx primarily argues that it did not fail to engage in the interactive process because Plaintiff failed to trigger the process with a request for an accommodation. "Although Kranson spoke to Ms. Cline on numerous occasions, he never identified any medical restrictions and never requested an accommodation." (Mot. at 8–9.) As such, FedEx had "simply nothing . . . to do until it received notice" on June 6, 2011 that Plaintiff would be returned to work. (*Id.* at 9.) FedEx denies that Dr. Stehr asked Nurse Plumb about modified work at the May 9th Appointment, but even if it did occur, such question would not have triggered the interactive process. (Reply at 3–4.) FedEx does not otherwise respond in its Reply to Plaintiff's argument that Nurse Plumb is an agent of FedEx.

The Court finds that, on balance, triable issues of fact exist regarding whether FedEx failed to engage in the interactive process. There is no dispute that Plaintiff was injured on the job and that FedEx was aware of the injury. Sedgwick served as the third-party administrator for FedEx's workers' compensation claims and arranged with Intracorp to have Nurse Plumb on hand at Plaintiff's medical appointments during his recovery. FedEx admits that "Nurse Plumb would keep Ms. Cline aware of Kranson's work/disability status following his medical visits." (RSS No. 19.) In other words, regardless of who her employer was, FedEx admits that Nurse Plumb was in some manner responsible for communicating information from Plaintiff's medical visits. FedEx relied on her for information.

A factual dispute exists over whether Dr. Stehr asked Nurse Plumb about modified work. A jury should determine whether the conversation occurred, the resolution of which is potentially significant to whether the interactive process was triggered. Assuming that Nurse Plumb informed Dr. Stehr, in the presence of Plaintiff and his wife, that no modified work was available, that action may have effectively cut off the interactive process before it truly began. *See Scotch*, 173 Cal. App. 4th at 1014 ("[b]oth employer and employee have the obligation 'to keep communications open'") (quoting *Jensen*, 85 Cal. App. 4th at 266). There is thus a material issue regarding whether FedEx had notice of the attempt to initiate the process, based on Nurse Plumb's responsibility to inform Cline of work/disability status. At the same time, summary judgment cannot be granted to Plaintiff and a jury should take into account Plaintiff's failure to follow up with Cline after the May 9th Appointment and his failure to otherwise personally request an explicit accommodation at any other

1   time.  The Court cannot determine based on the evidence presented which party failed to initiate the

2   interactive process and/or why it broke down.  *See Scotch*, 173 Cal. App. 4th at 1014 ("Liability

3   hinges on the objective circumstances surrounding the parties' breakdown in communication, and

4   responsibility for the breakdown lies with the party who fails to participate in good faith.") (quoting

5   *Gelfo*, 140 Cal. App. 4th at 62 n. 22).

6         Finally, Plaintiff has presented significant evidence that no one at FedEx performed any

7   inquiries into whether modified work was available or even feasible, nor attempted to determine

8   Plaintiff's limitations at the time his 90-day leave expired.  (RSS Nos. 81–83, 87, 90–91, 94, 120 &

9   132.)  Indeed, Cline—who oversaw employees on medical leave—still considered Plaintiff

10  temporarily disabled as of May 9 (RSS No. 21), but admits that she did not engage in the interactive

11  process and never considered an accommodation for Plaintiff (RSS No. 87).  Under the

12  circumstances, triable issues exist on whether FedEx's conduct violated FEHA.

13        The Court **DENIES** the Motion and Cross-Motion on the third claim for failure to engage in

14  the interactive process.

15        **E.        Retaliation (Fifth Claim)**

16        A plaintiff can establish a prima facie case of retaliation in violation of the CFRA by showing

17  the following: (1) the defendant was a covered employer; (2) the plaintiff was eligible for CFRA

18  leave; (3) the plaintiff exercised his right to take a qualifying leave; and (4) the plaintiff suffered an

19  adverse employment action because he exercised the right to take CFRA leave.  *Rogers v. County of*

20  *Los Angeles*, 198 Cal. App. 4th 480, 491 (Cal. Ct. App. 2011).  Plaintiff confirms in deposition that

21  his retaliation claim is based on taking "family leave" and cannot identify any other protected activity.

22  (Kranson Dep. 114:18–115:9; Compl. ¶ 44 ("[D]efendant retaliated against [Plaintiff] for requesting

23  and taking medical leave and for requiring an accommodation for his disability or otherwise

24  exercising his FEHA rights.").)

25        FedEx contends that Plaintiff fails on the fourth prima facie element, and that FedEx further

26  prevails on the claim because it has established legitimate, non-discriminatory reasons for its conduct.

27  (Mot. at 15; Reply at 11.)  Plaintiff does not provide independent argument on his retaliation claim,

28  but vaguely notes that the ADA prohibits an employer from retaliating against an employee for

seeking an accommodation in good faith.  (Opp. at 19–20 & n.5.)  He does not identify the requested accommodation sought that serves as the protected activity.

The triable issues of fact raised with respect to the first three claims preclude summary judgment for either party on this claim.  Accordingly, the Court **DENIES** the Motion and Cross-Motion on the fifth claim for retaliation.

### F.    Failure to Prevent Discrimination (Sixth Claim)

Under FEHA, it is an unlawful employment practice for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."  Cal. Gov't Code § 12940(k).  Defendant argues that the failure to prevent discrimination claim must fail because the underlying discrimination claim fails.  (Mot. at 16; Reply at 11.)  Plaintiff provides no additional substantive argument on this claim.  (Opp. at 19–20.)

Because summary judgment on the first claim for disability discrimination is denied as to both Motions, the Court hereby **DENIES** the Motion and Cross-Motion on the sixth claim for failure to prevent discrimination.

### G.    Wrongful Termination in Violation of Public Policy (Seventh Claim) and Violation of Cal. Bus. & Prof. Code § 17200 (Eighth Claim)

Similar to its arguments on the sixth claim, Defendant argues that Plaintiff's wrongful termination and UCL claims cannot proceed without a viable discrimination claim.  (Mot. at 16 (citing *Johnson v. Hertz Local Edition Corp.*, No. C 03-4439 MJJ, 2004 WL 2496164, at *5 (N.D. Cal. Nov. 3, 2004) (summary judgment of UCL and wrongful termination claims proper where plaintiff failed to demonstrate a prima facie case of discrimination)).  Plaintiff identifies the public policy against disability discrimination as the fundamental and substantial policy for his wrongful termination claim. (Opp. at 22.)  *See Stevenson v. Superior Court*, 16 Cal. 4th 880, 889–90 (1997); *Holmes v. General Dynamics Corp.*, 17 Cal. App. 4th 1418, 1426 n.8 (Cal. Ct. App. 1993).  Plaintiff also identifies the business practices at issue as "punishing employees who take leaves of absence protected by FEHA, [] failing to ensure managers and others engage in the interactive process, and [] failing to consider reasonable accommodations for employees with disabilities."  (Opp. at 23.)

United States District Court
Northern District of California

Because summary judgment on the first claim for disability discrimination is denied as to both Motions, the Court hereby **DENIES** the Motion and Cross-Motion on the seventh and eighth claims for wrongful termination in violation of public policy and violation of the UCL, respectively.

### H.   Declaratory Relief (Ninth Claim)

Defendant contends that the ninth claim for declaratory relief must be granted because Policy 1-8 is "clearly lawful." (Mot. at 18.) Plaintiff responds that "the undisputed evidence shows that the policy violates FEHA by ignoring an employer's duties to engage in the interactive process and provide accommodations for disabled employees. Under prevailing California law, an extended job-protected leave of absence can be an accommodation. Policy 1-8 forecloses the opportunity to provide such an accommodation and is thus unlawful." (Opp. at 23.)

Neither party has established that Policy 1-8 is lawful or unlawful as a matter of law. Indeed, Policy 1-8 itself is discretionary, providing that "[a]t the end of 90 days and exhaustion of FMLA, if applicable, the employee's manager *may* replace the position of the employee on leave or allow the position to remain unfilled." (Kranson Dep., Ex. 52 (emphasis supplied); RSS No. 11.) "This decision should be based on departmental operating requirements," which necessarily takes into consideration case-specific circumstances such as the employee's department and operating requirements as of that time. (Kranson Dep., Ex. 52.) Other language in Policy 1-8 further confirms that the application of the Policy is discretionary—*i.e.*, "*[i]f* a decision is made to fill the position." (*Id.* (emphasis supplied).)

Here, whether the application of Policy 1-8 to Plaintiff violated FEHA will be determined by a jury. As such, the Court cannot determine as a matter of law that the Policy is lawful. At the same time, Plaintiff has not presented any evidence showing that Policy 1-8 is *per se* unlawful as applied to all employees, or, for that matter, even a single other employee. The record is insufficient for the Court to make the declaration that Plaintiff seeks.

Accordingly, the Court hereby **DENIES** the Motion and Cross-Motion on the ninth claim for declaratory relief.

III.    **CONCLUSION**

For the foregoing reasons, the Court:

- **DENIES** Defendant's Motion for Summary Judgment as to the claims for disability discrimination (claim one), failure to provide reasonable accommodation (claim two), failure to engage in the interactive process (claim three), retaliation (claim five), failure to prevent discrimination (claim six), wrongful termination in violation of public policy (claim seven), violation of UCL (claim eight), and declaratory relief (claim nine);

- **GRANTS** Defendant's Motion as to the fourth claim for violation of the CFRA; and

- **DENIES** Plaintiff's Cross-Motion for Summary Judgment in its entirety.

This Order terminates Dkt. Nos. 26 & 39.

**IT IS SO ORDERED.**

Dated: October 1, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

21