United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIM KRANSON,<br><br>  Plaintiff,<br><br>vs.<br><br>FEDERAL EXPRESS CORPORATION,<br><br>  Defendant. | Case No.: 11-cv-05826-YGR<br><br>**ORDER DENYING PLAINTIFF'S REQUEST FOR DECLARATORY JUDGMENT AND FINDING NO VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200,** *ET SEQ.* |

  Plaintiff Tim Kranson ("Plaintiff") filed this disability discrimination action against Defendant Federal Express Corporation ("Defendant" or "FedEx") in state court on October 28, 2011. What remains of this case is an unfair competition claim and request for declaratory judgment that a policy of FedEx is *per se* unlawful based upon evidence regarding its application in one particular instance.

  Having carefully considered the papers submitted and the pleadings in this action, the witnesses' testimony and entire trial record, the arguments of counsel during trial proceedings, and for the reasons set forth below, the Court hereby: **DENIES** Plaintiff's request for declaratory judgment; and **FINDS** that, based on the lack of evidence presented, the FedEx policy at issue cannot be deemed an unlawful, unfair, or fraudulent business practice under California Business and Professions Code section 17200, *et seq.* ("UCL" or "Section 17200").

**I. BACKGROUND**

  **A. Procedural**

  Plaintiff alleged nine claims against FedEx: (1) disability discrimination under the Fair Employment and Housing Act ("FEHA"); (2) failure to provide reasonable accommodation; (3) failure to engage in the interactive process; (4) violation of the California Family Rights Act

("CFRA"); (5) retaliation; (6) failure to prevent discrimination; (7) wrongful termination in violation of public policy; (8) violation of the UCL; and (9) declaratory relief. (Dkt. No. 1.) As part of the Complaint, Plaintiff sought a determination of whether FedEx's medical leave of absence policy constitutes an unlawful business practice under the UCL, and a judicial declaration that the FedEx policy violates FEHA. (Compl. at Prayer for Relief ¶ 5.)

The parties filed cross-motions for summary judgment. (Dkt. Nos. 26–27, 39.) The Court issued an order on October 1, 2012 granting summary judgment to Defendant on Plaintiff's CFRA claim, but denying the cross-motions on all other claims. (Dkt. No. 90 ["Summary Judgment Order"].)

On October 9, 2012, the Court commenced a jury trial. The jury was asked to reach a verdict on the claims for: disability discrimination; failure to engage in the interactive process; failure to provide reasonable accommodation; retaliation; failure to prevent discrimination or retaliation; and wrongful termination in violation of public policy. The claims for violation of the UCL and request for declaratory judgment were not presented to the jury. On October 15, 2012, the jury rendered its verdict. (Dkt. No. 128.) Specifically, the jury rendered the following verdict on each claim:

| Claim | Verdict |
| --- | --- |
| Disability Discrimination | Plaintiff |
| Failure to Engage in the Interactive Process | Defendant |
| Failure to Provide Reasonable Accommodation | Plaintiff |
| Retaliation | Plaintiff |
| Failure to Prevent Discrimination or Retaliation | Defendant |
| Wrongful Discharge in Violation of Public Policy | Plaintiff |

The jury awarded Plaintiff $40,373.00 in past lost earnings and $341,824.00 in future lost earnings. (*Id.*) No damages were awarded for non-economic losses.

Following the verdict, the parties' filed post-trial briefing on the remaining claim for violation of the UCL and Plaintiff's request for a judicial declaration. The parties initially filed briefs that did not contain any citations to the trial record. (*See* Dkt. No. 134.) Pursuant to this Court's Order

2

Requiring Supplemental Post-Trial Briefing, the Court required that the parties revise their previously-filed briefs to include such references. Thereafter, the parties filed the following briefs:

- Plaintiff's Memorandum of Points and Authorities in Support of Declaratory Judgment and Violation of the Business and Professions Code Section 17200, et seq. (With Citations Added) (Dkt. No. 141 ["Plaintiff's Brief"]);
- Defendant Federal Express Corporation's Revised Opposition to Plaintiff's Post-Trial Briefing Regarding Plaintiff's Claim for Violation of Business and Professions Code § 17200 and Request for Declaratory Judgment (Dkt. No. 139 ["Defendant's Opposition"]);
- Defendant Federal Express Corporation's Revised Post-Trial Briefing Regarding Plaintiff's Claim for Violation of Business and Professions Code § 17200 and Request for Declaratory Judgment (Dkt. No. 140 ["Defendant's Brief"]); and
- Plaintiff's Opposition to Defendant's Post-Trial Briefing Regarding Plaintiff's Claim for Business and Professions Code § 17200 and Request for Declaratory Judgment (With Citations Added) (Dkt. No. 142 ["Plaintiff's Opposition"]).[1]

**B.   Factual**

This trial in this action focused on Tim Kranson, who began working at FedEx in May of 1990 as an at-will employee. (Transcript of Proceedings ("Tr."), Vol. III, 477:11–13, 511:8–11.) He began as a material handler in Oakland, California. (*Id.*, 477:14–23.) In 1994, he was promoted to the position of part-time ramp agent; in 1997, his position became full-time. (*Id.*, 478:18–479:2.)

On February 2, 2011, Plaintiff suffered an injury while offloading an aircraft. (*Id.*, 511:15–19; Trial Ex. 213.) Plaintiff lacerated his left toe, broke his middle toe, and ruptured a tendon in his right arm. (Tr., Vol. III, 484:3–6, 484:22–485:2.) His injuries required hospitalization, surgery on his arm, and having his toe sewn back together. (*Id.*, 485:3–486:8.) Plaintiff had numerous medical visits to follow up on his injuries. (*See generally* Tr., Vol. IV, 566–579.)

---

[1] The previous version of Dkt. No. 142 (without citations) is marked as a pending motion in ECF. Because this Order resolves the revised briefings submitted by the parties, this Order terminates Dkt. No. 133.

At the time of Plaintiff's injury, FedEx had a policy entitled "1-8 Leave of Absence (Medical)—Merit Hourly." (Trial Ex. 12 [the "Policy"].)[2] The "Position Retention" section of the Policy provided as follows:

> Positions for employees on medical leave remain available for a minimum of 90 calendar days or expiration of FMLA [Family and Medical Leave Act], whichever is longer. At the end of 90 days and exhaustion of FMLA, if applicable, the employee's manager may replace the position of the employee on leave or allow the position to remain unfilled. This decision should be based on departmental operating requirements. In no event is any employee entitled to more than one position retention period per medical leave of absence period.
>
> If a decision is made to fill the position, the manager must notify the employee in writing of that decision. The position may not be filled earlier than the 91st day or prior to exhaustion of FMLA coverage.

(Trial Ex. 12 at 4.)[3]

Plaintiff received a letter from Kathleen Cline, the Human Capital Management Program Advisor for FedEx, dated February 9, 2011. (Tr., Vol. IV, 561:3–16 (Kranson); *id.*, Vol. III, 386:11–17 (Cline); Trial Ex. 3.) The letter stated that:

> We will hold a position open for you for at least ninety (90) calendar days and the exhaustion of any eligible FMLA entitlement. If you are unable to return to work within this time period, we may need to replace you in your position in order to maintain service to our customers. If your position is replaced, you will report to the District HCMP Advisor and your work location will be charged to the District Office for administrative purposes until you are released to return to work full duty. If your position is no longer available, and you are then released to return to work (other than TRW [Temporary Return to Work]), you will be given an opportunity to submit unlimited JCA's [Job Change Applications], for a 90 calendar day period or the remainder of your medical leave, whichever is less, and receive preferential treatment for lateral or lower level positions for which you are qualified to perform

---

[2] The copy of the Policy received as Trial Exhibit 12 states that the policy was last revised on September 5, 2010 and reflects a print-out date of "2/23/2011" in the bottom right-hand margin.

[3] The California Family Rights Act closely parallels the provisions of the FMLA, 29 U.S.C. section 2601, *et seq.* The CFRA provides that "it shall be an unlawful employment practice for any employer . . . to refuse to grant a request by any employee with more than 12 months of service with the employer, and who has at least 1,250 hours of service with the employer during the previous 12-month period, to take up to a total of 12 workweeks in any 12-month period for family care and medical leave." Cal. Gov't Code § 12945.2(a).

with or without reasonable accommodation. If you have not accepted a job by the expiration of this period, your employment will be terminated.

(Trial Ex. 3.) Plaintiff spoke to Ms. Cline on the telephone on February 17 to inform her of a doctor's visit. (Tr., Vol. IV, 566:6–567:18.) Plaintiff signed an acknowledgement on February 18, 2011 stating that he understood the previous letter. (*Id.*, 562:23–563:2.)

The 90-day period beginning on February 9, 2011 expired on May 10, 2011. (*Id.*, 571:18–572:1.) Over the course of the 90-day period, Plaintiff contacted Ms. Cline four times after his medical appointments to inform her of his status. (*Id.*, Vol. III, 442:16–443:1, 444:9–446:7, 449:19–451:6 (Cline); *id.*, Vol. IV, 565–579 (Kranson).) Ms. Cline never contacted Plaintiff on her own initiative to inquire as to his status. (*Id.*)

On May 9, 2011, Plaintiff attended a medical appointment. (*Id.*, Vol. IV, 572:3–10.) Plaintiff's doctor, Dr. Stehr, did not release him to work on that date. (*See* Trial Ex. 6.) Plaintiff denied at trial that he was not released to work on May 9; according to Plaintiff, Dr. Stehr asked Nurse Karen Plumb—who had been attending Plaintiff's medical appointments[4]—whether a modified work schedule was available. (Tr., Vol. IV, 573:13–24.) Plaintiff did not contact Ms. Cline after that appointment to ask about a modified work schedule. (*Id.*, 574:14–23.)

On May 19, 2011, Plaintiff received another letter from Ms. Cline. (Tr., Vol. IV, 575:12–576:3; Trial Ex. 4.) This letter (entitled "Status of Your Open Job") stated that her "records indicate[d] that [Plaintiff] ha[d] been on a medical leave of absence in excess of 90 days." (*Id.*) The letter continued that "[i]n order to maintain operational efficiency and service to our customers, it may be necessary that we take steps to replace or eliminate your position, based on operational necessity." (*Id.*) Plaintiff did not contact Ms. Cline in response to this letter. (Tr., Vol. IV, 576:4–12.) He testified he was not concerned about losing his job at that time (*id.*, 576:21–577:3) as he had spoken recently to his manager, Reggie Wright, regarding the security of his job (*id.*, 576:13–20). He understood as of May 19 that no action had been taken to eliminate his position and sent Ms. Cline an

---

[4] Nurse Plumb attended Plaintiff's appointments on behalf of Sedgwick Claims Management Services, Inc., the third-party claims administrator for FedEx, but she did not have authorization to communicate Plaintiff's medical condition to FedEx—she only advised FedEx regarding his return to work status. (Tr., Vol. IV, 574:25–575:8 (Kranson); *id.*, Vol. IV, 647:20–648:13, 648:16–649:4, 671:24–672:1 (Plumb); *id.*, Vol. III, 402:13–23 (Cline), 516:6–17 (Kranson).)

5

acknowledgment of her letter. (*Id.*, 577:4–13.) On June 6, 2011, Dr. Stehr released Plaintiff to return to full work as of June 13, 2011. (Trial Ex. 6; Tr., Vol. IV, 578:20–579:11.) Plaintiff received another letter dated June 10, 2011 that informed him that he was on a 90-day unpaid personal leave to seek a new position at FedEx. (Tr., Vol. IV, 583:9–13; Trial Ex. 7.)[5] Plaintiff acknowledged receiving this letter on June 13. (Tr., Vol. IV, 583:18–21.)

### C.  Relief Requested

Plaintiff seeks three categories of relief. First, Plaintiff seeks a judgment against Defendant "declaring that its policy that disabled employees on medical leave may be replaced after they exceed ninety days of leave without an interactive process or reasonable accommodation is unlawful." (Plaintiff's Brief at 1; *see* Policy, *supra*.) Plaintiff argues the jury verdict in his favor for disability discrimination and retaliation supports a declaratory judgment that "a company policy that gives its managers the authority to violate the law [here, FEHA] is unlawful." (Plaintiff's Brief at 1.) Second, Plaintiff seeks a finding by this Court that Defendant has committed "numerous" unlawful, unfair, and fraudulent business practices in violation of Section 17200. (*Id.* at 1–2.) Third, Plaintiff requests restitution and injunctive relief under the UCL, and attorneys' fees pursuant to Business and Professions Code section 17082 and California Code of Civil Procedure 1021.5. (*Id.* at 2, 17.)

## II.  DISCUSSION

### A.  Plaintiff's Request for a Judicial Declaration (Declaratory Relief)

Plaintiff seeks declaratory relief pursuant to 28 U.S.C. section 2201 ("Section 2201" or "Declaratory Judgment Act"), which provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."[6] To obtain declaratory relief, an action must

---

[5] Ms. Cline testified that the Position Retention section of Policy 1-8 was applied to Plaintiff. (Tr., Vol. III, 392:3–22, 391:10–13.)

[6] Section 2201 is subject to certain exceptions that are not applicable here.

present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution and fulfill statutory jurisdictional requirements. *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222–23 (9th Cir. 1998). A district court must also be satisfied that "entertaining the action is appropriate[,]" which is a discretionary decision. *Id.* at 1223; *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (Supreme Court explaining that while the Declaratory Judgment Act authorized courts to make a declaration of rights, "it did not impose a duty to do so").

"Declaratory relief is appropriate '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (quoting *Bilbrey by Bilbrey v. Brown,* 738 F.2d 1462, 1470 (9th Cir. 1984)); *DeFeo v. Procter & Gamble Co.*, 831 F. Supp. 776, 778 (N.D. Cal. 1993).

In determining matters of "serious public concern[,]" particularly where a party seeks a discretionary declaratory judgment, a court should make such decision "on an adequate and full-bodied record." *Public Affairs Assocs.*, 369 U.S. at 112–13. Courts may exercise their discretion to refuse granting declaratory relief because the state of the record is inadequate to support the extent of the relief sought, or when such relief would not serve a purpose to clarify and settle the legal relations at issue nor afford relief from the controversy faced by the parties). *Giannini v. Am. Home Mortgage Servicing, Inc.*, No. C11-04489 TEH, 2012 WL 298254, at *4 (N.D. Cal. Feb. 1, 2012) (citing *United States v. Washington,* 759 F.2d 1353, 1356 & 1357 (9th Cir. 1985)).

Plaintiff seeks a "declaration of his rights regarding the policy which was relied upon to terminate his employment of twenty-one years." (Plaintiff's Opposition at 3.) Plaintiff explains that the Policy is unlawful because required CFRA leave—which Defendant contends it provided—is but one part of Defendant's obligations under FEHA. (*Id.*) Aside from CFRA, FEHA also includes requirements that Defendant engage in the interactive process[7] and provide a reasonable

---

[7] Cal. Gov't Code section 12940(n) provides that it is unlawful for an employer "to fail to engage in a timely, good faith, interactive process with an employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability."

7

accommodation[8] to a disabled employee, such as Plaintiff, "*even when job-protected leave expires.*" (*Id.* (emphasis supplied).)  In sum, Plaintiff argues he is entitled to a declaration that the Policy "is unlawful because it allows Fed[E]x to terminate an employee, as it did with [him], at the ninety day mark *without even considering whether a further accommodation is available* and reasonable." (*Id.* at 4 (emphasis supplied) (further emphasizing that the Policy is unlawful regardless of the fact that it "hypothetically[] allow[s] a longer period of retention" because "it allows Fed[E]x to contravene the FEHA when it sees fit").)

Defendant responds with numerous arguments as to why declaratory judgment cannot be granted for Plaintiff.  First, while Plaintiff requests that the Policy be deemed *per se* unlawful, he has failed to specify the terms of the declaratory judgment, including what such judgment would declare and which portions of the Policy are unlawful. (Defendant's Opposition at 1, 4.)

Second, Defendant argues insufficient evidence exists to support a finding of the impact of the Policy on any employee other than Plaintiff.  Notably, Plaintiff did not bring a claim for discrimination based on a disparate impact and the Court did not take evidence of the impact of the Policy on others.  (*Id.* at 1, 3.)

Third, Defendant argues that the evidence at trial showed that Plaintiff himself failed to initiate the interactive process, as reflected by the verdict in favor of Defendant on that claim.  (*Id.* at 1–2.)

Fourth, the evidence showed that a reasonable accommodation could not have been offered because no one—not even Plaintiff or his doctor—knew how much longer he would need on leave as of when the 90-day period of job-protected leave expired.  (*Id.* at 2–3.)  While Defendant concedes that extending job protected leave can be a reasonable accommodation, it must appear likely that the employee will be able to return to his position at some time in the foreseeable future.

---

[8] FEHA imposes upon employers an affirmative duty to make reasonable accommodations for a known physical or mental disability of an employee, provided the accommodation does not create an undue hardship to the employer's operations. Cal. Gov't Code § 12940(m).  "Where a necessary accommodation is obvious, where the employee requests a specific and available reasonable accommodation that the employer fails to provide, or where an employer participates in a good faith interactive process and identifies a reasonable accommodation but fails to provide it, a plaintiff may sue under section 12940(m)." *Nadaf-Rahrov v. Neiman Marcus Group, Inc.,* 166 Cal. App. 4th 952, 983 (Cal. Ct. App. 2008).

Fifth, the Policy itself does not "automatically" terminate employees after 90 days, as Plaintiff argues. (Defendant's Opposition at 3.) Rather, it explicitly states that the decision should be made based on departmental operational requirements, which was confirmed by testimony from Kathleen Cline that the Policy was applied on a case-by-case basis. Here, Plaintiff received more leave than is required by CFRA (84 days) and more than is contemplated by the Policy (90 days). Defendant also highlights the jury's verdict in its favor on the failure to prevent discrimination or retaliation claim as indicating there was a lack of evidence that the Policy itself was not reasonable or inappropriate. (*Id.* at 2.) On balance, a "litany of variables contributed to Plaintiff's termination" and the Policy itself cannot be deemed unlawful on this record. (*Id.* at 3.)

Ultimately, the Court agrees with Defendant that a judicial declaration here will not determine a right of the parties that has not already been resolved by the verdict. First, the jury did determine that Defendant discriminated against Plaintiff on the basis of his disability, that it failed to provide a reasonable accommodation to him, and, in so doing, retaliated against him and wrongfully terminated his employment. However, the jury also found that *Plaintiff did not request* that Defendant make a reasonable accommodation for his physical condition such that he would be able to perform the essential duties of his job, and, as such, found against Plaintiff on the claim for failure to engage in the interactive process. The jury further found for Defendant on the claim that it had failed, allegedly, to take reasonable steps to prevent discrimination or retaliation. A judicial declaration here will not serve any *useful* purpose that further clarifies the legal relations between Plaintiff and Defendant. *Guerra*, 783 F.2d at 1376; *Bilbrey by Bilbrey,* 738 F.2d at 1470; *DeFeo*, 831 F. Supp. at 778. All claims have been resolved.

Second, Plaintiff no longer works for FedEx and there is no current or future relationship that is uncertain or in need of resolution. For his wrongful termination, among other things, Plaintiff will receive a total of $382,197 from Defendant. In light of the jury verdict, the parties' legal relationship does not require clarification. Notably, Plaintiff has not specified what clarification is needed, why it is needed, nor the potential harm to Plaintiff that may result if the Court elects not to issue a declaratory judgment.

9

1 Third, the declaration that Plaintiff seeks extends beyond identifying "his [own] rights
2 regarding the policy" to declare the *entire Policy unlawful* as it relates to all disabled employees. (*See*
3 Plaintiff's Opposition at 2, 3 (declare "unlawfulness of Policy 1-8"); Plaintiff's Brief at 1 ("policy that
4 disabled employees on medical leave may be replaced after they exceed ninety days of leave without
5 an interactive process or reasonable accommodation is unlawful"); *id.* at 11 (Policy "grants Fed[E]x
6 managers the authority to effectively opt out of the FEHA's requirements and eliminate a disabled
7 employee's position once ninety days have run without regard to providing reasonable
8 accommodation"); *id.* at 13 ("any policy which, on its face, allows managers to break the law is
9 unlawful"); *id.* at 17–18 ("declare Fed[E]x policy 1-8 unlawful because it violates the FEHA").) Such
10 a sweeping declaration, however, is unsupported by the record.

As to this issue, the only relevant testimony during trial was as follows:

> Q. Now, in -- in your position, you become aware of employees within your geographical area who have been out on medical leave for more than 90 days; is that right?
> A. Yes. That is correct.
> Q. And some of those employees actually return to their old positions, even though they have been out more than 90 days; isn't that true?
> A. That's true.
> Q. You're -- are you aware of employees since January of 2011 other than Mr. Kranson who were absent for more than 90 days due to medical reasons but were allowed -- were not allowed to return to their position?
> A. Yes.
> Q. That's happened to several employees, hasn't it?
> A. Yes.
> Q. And so those employees would be put on an unpaid leave of absence per FedEx policy?
> A. Correct.
> Q. And that unpaid leave of absence would go for another 90 days?
> A. That is correct.
> Q. And the policy is if they don't find another position within FedEx in that period of time, they would be terminated from employment?
> A. That is true.

(Tr., Vol. III, 394:18–395:17.)

10

This testimony states nothing more than the fact that an unidentified number of employees have been terminated from employment under the Policy after being unable to return to work after 90 days, while others actually returned to work after 90 days. As to those employees who did not return to their positions, there is no context provided to explain the circumstances of their disabilities nor the context of their leave. Moreover, while Plaintiff explicitly seeks a declaration that the Policy is unlawful because it allows Defendant to terminate an employee "without even considering" reasonable accommodations, this testimony speaks in no way to whether Defendant engaged in the interactive process with these employees or offered them a reasonable accommodation. For the Court to assume that neither of these obligations were met and that Defendant did not "even consider[]" an accommodation—and thus that the Policy was *unlawfully* applied to them—requires the Court to speculate beyond the testimony in the record.[9]

Similarly, the Court cannot conclude based on the trial testimony or the face of the Policy that the Policy itself mandates an outcome that is unlawful under FEHA, nor that is forecloses compliance with the duty to accommodate or engage in the interactive process. The Policy, in fact, states as follows: "At the end of 90 days and exhaustion of FMLA, if applicable, the employee's manager *may* replace the position of the employee on leave or allow the position to remain unfilled. This decision should be based on departmental operating requirements." (Trial Ex. 12 (emphasis supplied).) While the Policy clearly identifies a 90-day timeframe, it is permissive in allowing that the employee's position be replaced or remain unfilled.

Plaintiff's characterizations of the Policy calling for "automatic" termination or requiring that an employee be "100% healed" lack evidentiary support. (*See* Plaintiff's Brief at 1, 9.)

The Court made this exact point in the Summary Judgment Order:

---

[9] Significant evidence at trial supports Plaintiff's argument that the person who decided not to fill Plaintiff's position (Guy Capriulo) felt constrained to follow the Policy. (Tr., Vol. II, 287:20–289:7 ("After 90 days, the job's displaced, so I followed that policy, and it . . . never had anything to do with Mr. Kranson. . . . Once that time expired, I didn't fill the job."); 290:11–291:7.) However, this testimony does not change the fact that the Court cannot determine whether Defendant failed in its FEHA obligations with regard to *any other employee* the Policy may have applied to. Those issues were not presented to the Court during trial.

11

> Policy 1-8 itself is discretionary, providing that "[a]t the end of 90 days and exhaustion of FMLA, if applicable, the employee's manager *may* replace the position of the employee on leave or allow the position to remain unfilled." "This decision should be based on departmental operating requirements," which necessarily takes into consideration case-specific circumstances such as the employee's department and operating requirements as of that time. Other language in Policy 1-8 further confirms that the application of the Policy is discretionary—*i.e.*, "*[i]f* a decision is made to fill the position."

(Summary Judgment Order at 20 (citations omitted; emphasis in original).) The Court also stated that based on the summary judgment briefing and evidence at that time, "Plaintiff has not presented any evidence showing that Policy 1-8 is *per se* unlawful as applied to all employees, or, for that matter, even a single other employee. The record is insufficient for the Court to make the declaration that Plaintiff seeks." (*Id.*) Plaintiff was therefore on notice leading up to and throughout trial that it was the Court's perspective that the sought-after declaration would require showing the application of the Policy to other employees. Plaintiff chose not to elicit any meaningful testimony that could have supported the declaration he seeks. Having failed to do so, the Court finds that the record is inadequate to support the relief sought. *Giannini*, 2012 WL 298254, at *4; *Public Affairs Assocs.*, 369 U.S. at 112–13.

For the foregoing reasons, the Court **DENIES** Plaintiff's claim for declaratory relief and request for a judicial declaration that the Policy is unlawful.

**B.     California Business and Professions Code Section 17200**

The UCL provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. § 17200. Plaintiff argues throughout his briefs that the evidence at trial supports a finding that the Policy violates the UCL as a *business practice*. (Plaintiff's Brief at 1–2, 14, 15, 16; Plaintiff's Opposition at 1, 2, 4, 5.)

As a threshold issue, Plaintiff's failure to present evidence regarding the application of the Policy to other employees prevents the Court from finding, as Plaintiff argues, that the Policy constitutes a business practice. Plaintiffs cites to *Herr v. Nestle U.S.A., Inc.*, 109 Cal. App. 4th 779, 789 (Cal. Ct. App. 2003) and *Alch v. Superior Court*, 122 Cal. App. 4th 339, 401 (Cal. Ct. App. 2004) for the proposition that discrimination in violation of FEHA is an unlawful employment practice that may be enjoined under the UCL. (Plaintiff's Brief at 15–16.) The *Herr* court did hold that age

12

discrimination in violation of FEHA may be enjoined under the UCL, and *Alch* cited *Herr* on this issue. However, in *Herr*, the evidence presented at trial supported a continuous pattern of age discrimination against the plaintiff, who had sought many opportunities for advancement but had been rejected each time for a younger employee. 109 Cal. App. 4th at 783–786. Moreover, the employer in *Herr* had explicit policies favoring "young people." *Id.* at 783. *Alch*, on the other hand, was a class action. There, the court held that a UCL claim could be alleged based on allegations of a pattern or practice of age discrimination in violation of FEHA against hundreds of television writers. 122 Cal. App. 4th at 400–01. In neither *Herr* nor *Alch* did the court hold that a single instance of discrimination against a single plaintiff constitutes a *business practice* for the purposes of the UCL. Those cases dealt with what this Court can only describe as rampant and entrenched policies of discrimination.

As discussed with regard to the declaratory judgment claim, the Court cannot find that the Policy is an unlawful *business practice* that violates the UCL. On this basis alone, the evidence is insufficient to establish that the Policy has been applied unlawfully as a practice in contravention of FEHA, with the exception that the jury found that Defendant did not comply with certain FEHA obligations with respect to Plaintiff. Moreover, the Policy on its face, while perhaps running a risk of violating FEHA in a manner similar to Plaintiff's situation, is not mandatory in nature. The possibility that Plaintiff's situation repeats or repeated itself is not sufficient to find that the Policy itself is an unlawful business practice.[10]

Plaintiff's arguments that the Policy is "unfair" under the UCL fail for the same reasons. Plaintiff broadly seeks to protect "consumers" and other similarly-situated FedEx employees from

---

[10] The Court notes that while the Policy (Trial Ex. 12) is seven pages, Plaintiff fails to specify which portions of the Policy are unlawful. Although the relevant language of the Policy is the "Position Retention" section, Plaintiff's request for declaratory judgment and UCL claim are broadly phrased and imply that he seeks to have the entire Policy declared unlawful and in violation of the UCL. In addition, Plaintiff identifies—as part of the "Policy"—language that does not to exist in the Position Retention section of Trial Ex. 12 itself, but rather appears in letters sent by Ms. Cline to Plaintiff. (Plaintiff's Brief at 16 ("The policy further states that after the ninety day period a position may be replaced 'in order to maintain service to our customers.'"; *compare* Trial Ex. 12 *with* Trial Exs. 3 & 4.) The lack of clarity regarding the scope of the "Policy" is another reason that the Court cannot provide the requested relief.

FedEx's Policy. (Plaintiff's Opposition at 4–5.) Plaintiff seems to be arguing that the permissive Policy is unfair simply because it "allows Fed[E]x to fail to engage in the interactive process and fail to reasonably accommodate a disabled employee" (Plaintiff's Brief at 15)—however, the Policy equally allowed Defendant to comply with all FEHA obligations and the Policy at the same time, and there is no basis for this Court to determine one way or another what the practice was. There is likewise no basis in the record for the Court to assume that an "unfair business advantage" exists because of the Policy. (Plaintiff's Opposition at 4; *see* Plaintiff's Brief at 15–16.) It would be entirely speculative for the Court to conclude that any amount of "resources" was saved because Defendant implemented the Policy against disabled employees rather than "exploring or providing reasonable accommodation" to them. (Plaintiff's Brief at 16.) Moreover, Plaintiff presented no evidence regarding the business practices of unidentified "competitors."

Plaintiff argues the Policy is fraudulent because "members of the public" and/or "Fed[E]x's employees [and] prospective employees" get "the impression that [the Policy] complies with the law." (Plaintiff's Brief at 16.) More specifically, "the policy is confusing and misleading because members of the public do not know that due to the policy Fed[E]x will replace a disabled employee who exceeds ninety days of medical leave without any regard or attempt to engage in the interactive process or provide a reasonable accommodation." (Plaintiff's Opposition at 5.) The Court is not persuaded by this argument because it assumes that (i) members of the public have the ability or a reason to view the Policy, and (ii) their understanding of the Policy differs from its implementation. However, no basis exists for the Court to assume that the members of the public even have access the Policy. Rather, the general public is wholly unfamiliar with Defendant's employment practices and is not directly affected by them. As is evident from his briefs, Plaintiff actually seeks to protect disabled employees from the application of the Policy, not the general public. Regardless of whether Plaintiff was confused by the Policy, Plaintiff presented no evidence that any employees or prospective employees generally were likely to be deceived into believing FedEx "complie[d] with the law."

For the foregoing reasons, the Court **DENIES** Plaintiff's claim for violation of the UCL. Because the Court finds that the record does not support that the Policy violates the UCL as a business practice, it declines to address any further arguments raised by the parties.

### III. CONCLUSION

For the foregoing reasons, the Court hereby: **DENIES** Plaintiff's request for declaratory judgment; and **FINDS** that, based on the lack of evidence in the record, the FedEx Policy at issue cannot be deemed an unlawful, unfair, or fraudulent business practice under the UCL.

This Order terminates Dkt. Nos. 133.  (*See*, *supra*, n.1.)

**IT IS SO ORDERED.**

Dated: June 10, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**