1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIM KRANSON,

          Plaintiff,

      vs.

FEDERAL EXPRESS CORPORATION,

          Defendant.

Case No.: 11-cv-05826-YGR

**ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL; AND DENYING PLAINTIFF'S MOTION FOR ADDITUR, OR IN THE ALTERNATIVE, FOR A NEW TRIAL**

Plaintiff Tim Kranson filed this disability discrimination action against Defendant Federal Express Corporation ("FedEx") in state court on October 28, 2011. On October 15, 2012, a jury rendered a verdict on six of Plaintiff's claims. Specifically, the jury found in favor of Plaintiff on four claims: Disability Discrimination, Failure to Provide Reasonable Accommodation, Retaliation, and Wrongful Discharge in Violation of Public Policy. The jury found in favor of FedEx on two claims: Failure to Engage in the Interactive Process and Failure to Prevent Discrimination or Retaliation. Following the verdict, the parties filed post-trial briefing on the remaining claim for violation of California Business and Professions Code section 17200, *et seq.* and Plaintiff's request for a judicial declaration. On June 10, 2013, the Court issued an Order Denying Plaintiff's Request for Declaratory Judgment and Finding No Violation of California Business and Professions Code Section 17200, *et seq.* The Court entered Judgment in this action on July 11, 2013.

Since the entry of Judgment, the parties have filed additional motions seeking to dismantle or revise the jury verdict. Defendant filed a Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial ("FedEx's Motion"). (Dkt. No. 160.) Specifically, FedEx argues three grounds upon which judgment in its favor or a new trial should be granted: (1) the weight of the

evidence did not support the verdict; (2) the jury instructions and verdict forms contained plain error; and (3) Plaintiff's counsel engaged in prejudicial misconduct.  In addition, Kranson filed a Motion for Additur, or in the Alternative, for New Trial ("Kranson's Motion") arguing specifically that the jury's award of zero damages for emotional distress was contrary to law and insufficient as a matter of law. (Dkt. No. 162.)[1]

The relief requested by both sides is not justified in light of the jury's power to decide the credibility and weight of the evidence presented.  No legal justification exists for this Court, unilaterally, to undo the jury's deliberative and collective decision.

Thus, having carefully considered the papers submitted and the pleadings in this action, the witnesses' testimony and entire trial record, the arguments of counsel, and for the reasons set forth below, the Court hereby **DENIES** FedEx's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial and **DENIES** Plaintiff's Motion for Additur, or in the Alternative, for New Trial.

## I.   BACKGROUND

A detailed procedural and factual background of this action can be found in this Court's Order Denying Plaintiff's Request for Declaratory Judgment and Finding No Violation of California Business and Professions Code Section 17200, *et seq.*  (*See* Dkt. No. 150.)

## II.   DISCUSSION

### A.   FedEx's Renewed Motion for Judgment as a Matter of Law

#### 1.   Legal Standard

Federal Rule of Civil Procedure 50(b) provides that if a court does not grant a motion for judgment as a matter of law made under Rule 50(a)[2], "the court is considered to have submitted

---

[1] Also pending before the Court are Plaintiff's Motion for Attorneys' Fees After Jury Verdict (Dkt. No. 166) and Motion for Review of Clerk's Taxation of Costs (Dkt. No.  186).  The Court will address these motions by separate order.

[2] Federal Rule of Civil Procedure 50(a)(2) provides that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury."  A court may resolve issues against a party and grant the motion on a claim or defense based on findings on those issues if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1).

the action to the jury subject to the court's later deciding the legal questions raised by the motion." A party having previously made such a motion "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). In ruling on the renewed motion, the court may: (1) allow judgment on the verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b)(1)–(3).

In reviewing a renewed motion for judgment as a matter of law, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Josephs v. Pacific Bell,* 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* "A jury's verdict *must be upheld* if it is supported by substantial evidence." *Johnson v. Paradise Valley Unified Sch. Dist.,* 251 F.3d 1222, 1227 (9th Cir. 2001) (emphasis supplied) (further explaining that "[s]ubstantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence"). The court may not weigh evidence or order a result it finds more reasonable if substantial evidence supports the jury verdict. *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984). While the court should review the record as a whole, "it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151 (2000).

## 2. Legal Analysis Regarding Evidence Supporting Jury Verdict

FedEx asks the Court to enter judgment as a matter of law on each of the four claims for which the jury found for Plaintiff: Failure to Provide Reasonable Accommodation, Disability Discrimination, Retaliation, and Wrongful Discharge in Violation of Public Policy. As a threshold matter, FedEx argues that no damages can be awarded on the disability discrimination, retaliation, and wrongful discharge claims because the jury was improperly instructed as a matter of law on the issue of causation pursuant to the recent California Supreme Court decision in *Harris v. City of Santa*

1  *Monica*, 56 Cal. 4th 203 (2013).[3]  As this is a purely legal issue and has the same impact on each of

2  the three claims, the Court addresses this argument first.

3      FedEx argues that Kranson may not recover his award of damages based on *Harris v. City of*

4  *Santa Monica*.  In *Harris*, the plaintiff proved that discrimination was a substantial factor motivating a

5  termination decision; however, the defendant-employer also proved that it would have made the same

6  decision in any event.  56 Cal. 4th at 232.  The California Supreme Court not only rejected Harris's

7  argument that a plaintiff would be entitled to an order of reinstatement or backpay in such instance,

8  but was reluctant to find non-economic harm compensable in damages under FEHA when non-

9  discriminatory factors would have brought about the plaintiff's discharge.  *Id.* at 232–33.  Ultimately,

10  the *Harris* court held that "a termination decision substantially motivated by discrimination is not

11  compensable in damages under [Cal. Gov't Code section] 12940(a) when an employer makes a same-

12  decision showing."  *Id.* at 234.

13      Here, FedEx argues the evidence that Kathleen Cline and Guy Capriulo would have made the

14  same decisions under Policy 1-8 and the reduction-in-force policy to (i) displace Kranson from his

15  ramp agent position, (ii) not backfill that vacated position, and (iii) terminate his employment

16  forecloses Plaintiff's ability to recover any damages on his claims for disability discrimination,

17  retaliation, and wrongful discharge.  Kranson responds that the testimony of FedEx witnesses showed

18  that Kranson would not have been displaced and his employment would not have been terminated if

19  he had never been injured and out on medical leave, which negates FedEx's purported same-decision

20  showing.

21      FedEx is correct that the California Supreme Court clarified the causation test in this post-trial

22  ruling.  However, even though FedEx is correct, the *Harris* decision in no way implicates the jury's

23  verdict for Kranson on the failure to provide reasonable accommodation claim.  FedEx implicitly

24  concedes this point in its alternative motion for a new trial, stating that if Kranson "prevails on retrial

25  of his failure to provide reasonable accommodation claim, the jury's damage award stands" whereas

26

27  _____

28  [3] Applying the post-verdict decision in *Harris*, if Kranson's claims were presented to a jury today, he
would be required to prove that his disability or medical leave was a "substantial motivating" reason
or factor for FedEx's decisions to subject him to an adverse employment action.

he "may not recover damages" for the other three claims under *Harris* even if he prevails on a retrial on those claims.  (FedEx's Motion at 15.)

The jury was not asked to differentiate damages amongst the various claims, but only to award damages if they had found for Plaintiff on any of the claims.  Thus, the damages verdict form read:

> *Answer the following questions only if you have answered yes to question 6 of the First Claim [Disability Discrimination], question 5 of the Second Claim [Failure to Engage in the Interactive Process], question 5 of the Third Claim [Failure to Provide Reasonable Accommodation], question 4 of the Fourth Claim [Retaliation], question 2 of the Fifth Claim [Failure to Prevent Discrimination or Retaliation], or question 4 of the Sixth Claim [Wrongful Discharge in Violation of Public Policy].*

(Verdict Forms [Dkt. No. 128] at 8 (italics and underlined emphasis in original).)  The jury was then asked to provide an amount for Kranson's damages in four separate categories: past lost earnings, future lost earnings, past non-economic loss, and future non-economic loss.  The jury awarded $40,373.00 in past lost earnings, $341,824.00 in future lost earnings, and zero for past and future non-economic loss.  (*Id.*)

Having provided an affirmative "yes" response to question 6 of the First Claim, question 5 of the Third Claim, question 4 of the Fourth Claim, *and* question 4 of the Sixth Claim, the jury proceeded to award a total of $382,197 to Kranson.  Accordingly, the amount awarded by the jury can be sustained by the verdict on the third claim alone.  Importantly, the parties agreed to a damages instruction in which the jury would answer the damages question once if it found for Plaintiff on any of his claims.  (*See* Transcript of Proceedings ["Tr."], Vol. V [October 12, 2012], 809:24–810:3 (FedEx's counsel informed the Court that the parties "agreed that [the parties] would not include damages questions on every single [verdict] form but rather just have one form that [the jury] would answer in the event that they got [to the damages issue] for any one of the[ claims].").)

In light of the fact that the jury's damages verdict may stand on the third claim alone, the next operative question is whether to grant FedEx's Renewed Motion for Judgment as a Matter of Law.  The only non-academic impact of *Harris* on the instant case arises if FedEx's Renewed Motion for Judgment as a Matter of Law as to the third claim succeeds.  The Court addresses that issue next.

### 3.    Third Claim: Failure to Provide Reasonable Accommodation

FedEx argues that this Court should rule it provided Kranson with a reasonable accommodation as a matter of law by providing him with paid leave throughout his disability.  In other words, FedEx satisfied its obligation under the Fair Employment and Housing Act ("FEHA") by providing leave until the time when Kranson was released by his doctor to return to work without restrictions on June 13, 2011.  FedEx contends that FEHA only required it to select a "reasonable" accommodation—which it did.  FedEx also argues that it had no legal obligation to hold Kranson's job open indefinitely, nor was it required to create a new job for him consisting of only non-physical duties or to remove another employee from such a position for him.  Finally, FedEx emphasizes there is no evidence showing that FedEx's accommodation of paid leave was not selected in good faith.  FedEx's arguments fail because the cases cited do not warrant such a result and sufficient evidence supports the jury's findings.

FedEx's argument that its sole accommodation of paid leave was a reasonable accommodation as a matter of law is based on a stretched interpretation of its supporting authorities.  Specifically, FedEx claims that under *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215 (Cal. Ct. App. 1999), its single accommodation was sufficient as a matter of law because the court wrote that "in appropriate circumstances, reasonable accommodation can include providing the employee accrued paid leave or additional unpaid leave for treatment." *Id.* at 226.  FedEx reads this case in a vacuum.  In *Hanson*, the plaintiff suffered a hand injury and took a series of leaves of absence from work to recuperate.  *Id.* at 219.  Plaintiff's employment was governed by a collective bargaining agreement ("CBA"), which provided him up to nine months of leave for an on-the-job injury.  *Id.* at 220.  After the nine months of leave under the CBA expired, the employer was free to "follow its own internal procedures with respect to the employee's leave" and, in Hanson's case, it "extended his leave three [more] times after the initial nine months, for a total of sixteen months or nearly twice that provided for by the CBA." *Id.* at 221.  Once plaintiff's doctor released him to return to work with certain physical restrictions, the employer determined he could not be returned to his original position as a meatcutter and ultimately concluded that the only available job for him was a part-time meat clerk.  *Id.* at 222.  Plaintiff rejected

this offer and initiated a lawsuit claiming, among other things, that the employer had failed to

accommodate him.

Given the circumstances in *Hanson*, the court determined that the employer "attempted to

reasonably accommodate [plaintiff], not once, but twice" for a total leave of sixteen months, or nearly

twice the negotiated period. *Id.* at 226. In affirming the trial court's grant of summary judgment, the

court held that "[i]ndubitably, the seven extra months of leave beyond the CBA period that

[defendant] granted [plaintiff] for the purpose of recuperation constitutes a reasonable accommodation

*in this case*." *Id.* at 227 (emphasis supplied) (further holding that "[t]he fact that at the end of his

leave, [he] was restricted from engaging in certain activities does not render the leave accommodation

itself unreasonable"). In addition, the employer further attempted to assist plaintiff's reentry into the

workplace by endeavoring to identify an alternate, vacant position, and offering him the one job that

he was qualified to perform based on his restrictions, which he rejected. *Id.* These factual

circumstances are markedly different from the leave provided to Kranson.

FedEx also argues that Kranson's claim fails as a matter of law because "FEHA does not

obligate an employer to choose the best accommodation or the specific accommodation a disabled

employee or applicant seeks. It requires only that the accommodation chosen be 'reasonable.'"

(FedEx's Motion at 2 (citing *Raine v. City of Burbank*, 135 Cal. App. 4th 1215, 1222 (Cal. Ct. App.

2006)) (citations omitted in Motion).)[4] FedEx concludes that because it selected a "reasonable"

accommodation under *Hanson*, and did so "in good faith" (FedEx's Motion at 2), the Court must find

that it reasonably accommodated Kranson as a matter of law. *Hanson*, however, does not support this

conclusion. The *Hanson* court explicitly qualified its affirmance of summary judgment in favor of the

employer to the factual circumstances of that case and purposefully stated that "in appropriate

circumstances" a reasonable accommodation "*can* include" accrued paid leave or additional unpaid

---

[4] *See also* Tr., Vol. VI [October 15, 2012], at 835 (jury instructed that "[i]f more than one
accommodation is reasonable, an employer makes a reasonable accommodation if it selects one of
those accommodations in good faith").

leave.  74 Cal. App. 4th at 226 (emphasis supplied).[5]  To the extent FedEx argues that paid leave is a *per se* reasonable accommodation, the Court rejects such argument.

Notably, FedEx neglects to address the fact that the jury received the following jury instruction: "The duty to accommodate is a continuing duty that *is not exhausted by one effort*.  If a reasonable accommodation available to the employer could have plausibly enabled a disabled employee to adequately perform his job, an employer is liable for failing to attempt that accommodation."  (Tr.,Vol. VI, at 835 (emphasis supplied).)  FedEx's argument that it reasonably accommodated Kranson as a matter of law simply by providing a period of paid leave runs contrary to this jury instruction.[6]  The jury was entitled to consider all of the witness testimony and evidence at trial in determining whether FedEx provided "reasonable" accommodation in this context.  It was further instructed that "holding a job open for a disabled employee who needs time to recuperate where it appears likely that [the] employee will be able to return to an existing position at some time in the foreseeable future" *may be* a reasonable accommodation.  (Tr., Vol. VI, at 834–35.)

Considering all of the evidence received at trial, substantial evidence exists to support the jury's finding that FedEx failed to provide a reasonable accommodation for Kranson's disability. (*See* Verdict Forms at 4.)  FedEx repeatedly argues that it could not have known when Kranson's disability would end because neither Kranson nor his own doctor knew, and all FedEx knew was that Kranson was "temporarily totally disabled" and only "hopeful" to return to work.  (*See* Tr., Vol. III [October 10, 2012], 447:11–449:12.)  As such, FedEx contends it cannot be held liable for refusing to extend his leave *indefinitely*.  However, the evidence at trial reflects that FedEx had information from Plaintiff that his recovery was progressing, he hoped to return to work in the near future, and his injury was not so significant as to make the assessment unreasonable.  (*See id.*, 442:3–449:12, 450:5–

---

[5] FedEx also directs the Court to *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243 (9th Cir. 1999) for the proposition that "unpaid medical leave may be a reasonable accommodation."  (FedEx's Motion at 4 (citing *Nunes*, 164 F.3d at 1247).)  The Ninth Circuit in *Nunes* also stated, though, that "an *extended* medical leave, or an *extension* of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the employer."  *Id.* (emphasis supplied).  As with *Hanson*, *Nunes* does not establish a rule that a paid medical leave is a *per se* reasonable accommodation.

[6] FedEx does not argue in its Motion that this instruction was erroneous.

United States District Court
Northern District of California

8

451:6; Trial Exs. 50 & 212A.)  Kathleen Cline, who oversaw employees on medical leave, testified that she did not reach out to Plaintiff to inquire about his progress, did not consider extending his leave, and did not ever ask whether Kranson's leave could be extended.  (Tr., Vol. III, 402:2–8, 449:24–451:6.)  Similarly, other FedEx witnesses did not consider extending Kranson's leave.  (*See id.*, Vol. II [October 9, 2012], 289:17–291:7 (Guy Capriulo did not believe he had the discretion to extend Kranson's leave, and his only decision was not to fill Kranson's vacated position), 260:22–261:1 (Michael Blanchard testified at deposition he was not aware that anyone considered additional leave to Kranson).)

Simply put, the jury was well within its purview to decide that FedEx's conduct in displacing Kranson after 90 days without more was unreasonable.  The verdict form did not require the jurors to identify specifically the reasonable accommodation that FedEx failed to provide.  Having not been asking to specify, the Court need not assume—as FedEx seems to argue—that the jury necessarily found that FedEx was required to indefinitely hold Kranson's job open for him.  Rather, viewing the evidence in the light most favorable to Kranson, it is quite plausible that the jury simply found that FedEx should have extended his leave for a short period of time or, at a minimum, attempted to find out how much longer he may have needed.[7]  In other words, the evidence supported a finding that FedEx chose to remain ignorant of Kranson's status such that it did not need to consider providing a further accommodation of extended leave for any period of time.

Likewise, the jury was not required to believe the testimony of FedEx's witnesses and conclude that it acted "in good faith" in selecting the accommodation.  With regard to the credibility of witnesses, the jury was instructed that "[i]n deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe anything a witness has said or part of it or none of it."  (Tr., Vol. VI, at 832.)  For the same reasons stated above, the totality of FedEx's conduct permitted the jury to conclude that it did not act in good faith.

---

[7] Because the Court finds that the jury's verdict can be upheld based on evidence that FedEx failed to extend (or even consider extending) leave for any period of time to allow Kranson to return to work, it need not consider Plaintiff's argument that another reasonable accommodation would have been to assign him to a ramp agent position with non-physically demanding duties.

United States District Court
Northern District of California

United States District Court

Northern District of California

For these reasons, the Court **DENIES** FedEx's Renewed Motion for Judgment as a Matter of Law as to the third claim for Failure to Provide Reasonable Accommodation and affirms the jury's award of damages.

### 4.    Remaining Claims

While each of the remaining claims is impacted by the *Harris* decision, the question remains whether FedEx is entitled to judgment as a matter of law on those claims.  The Court now addresses FedEx's arguments on that front.

#### a.    First Claim: Disability Discrimination

FedEx argues that the jury's verdict on Kranson's claim for disability discrimination is against the weight of the evidence irrespective of the instruction on causation. Specifically, FedEx contends the evidence showed: (i) Kranson could not perform the essential functions of his job at the time he was displaced from his position; and (ii) neither Guy Capriulo nor Kathleen Cline acted with a motive to discriminate.  The Court disagrees.

##### i.    Essential Functions at the Time of Displacement

As to this argument, FedEx argues that the evidence at trial proved that Kranson could not perform the physically-demanding duties of a ramp agent at the time Ms. Cline issued the displacement letter on May 19, 2011.  (*See* FedEx's Motion at 7 ("Because Kranson was not released to work *at the time of the displacement action*, he was not a qualified individual as a matter of law.") (emphasis supplied).)  FedEx's argument fails for two reasons.

First, in its Motion, FedEx now attempts to narrow the relevant timeframe for the adverse employment action to when Plaintiff was displaced from his position on May 19, 2011.  However, the verdict form did not require the jury to limit their deliberations on this claim to that date.  In fact, the parties discussed at length whether the jury had to find that certain conduct occurred as of a particular time. FedEx argued that the verdict form should include qualifications that the jury find each element as of "the time of the adverse employment action."  (Tr., Vol. V, 805:14–806:4, 806:23–807:2.)  By contrast, Kranson sought to impose a timeframe of June 13, 2011.  (*Id.*, 807:3–6.)  FedEx objected to the inclusion of a June 13 qualifier because such date "artificially impos[ed] a significant time for the jury when some of these dates, *the significance of them are in dispute*."  (*Id.*, 808:3–11 (emphasis

supplied).)  Ultimately, the Court determined that "the jury needs to decide itself when that adverse

employment action occurred. . . . Once they decide that, then they can decide the rest of these

questions in that context.  That's their choice."  (*Id.* 808:12–18.)  The Court further stated that it

would be appropriate to remove any references to a specific date because the verdict form needed "to

be framed so that they are making th[e] determination as to the adverse employment action.  They

don't have to tell us when that is, but they do have to have that in mind when they're answering these

questions."  (*Id.*, 808:21–809:1.)  FedEx agreed, stating that "[t]he jury can decide what the relevant

time was."  (*Id.*, 809:19–21.)

        In light of the fact that the jury was not asked to find whether Kranson could perform the

essential functions of his job at the time of displacement on May 19, 2011, FedEx cannot now argue

that the jury's verdict was inconsistent with the weight of the evidence on this basis.  As the Court

noted, it was for the jury to decide the relevant timeframe and the verdict form did not require that

they identify the time of the adverse employment action nor that it be as of May 19.[8]  Moreover, the

parties did not request that the jury answer a special interrogatory on this issue.

        FedEx's argument that Kranson could not perform the essential functions of his job on May 19

fails for the additional reason that the verdict form asked the jury whether "Kranson [was] able to

perform the essential job duties of the Ramp Agent position *with or without accommodation*."

(Verdict Forms at 2 (emphasis supplied); *see* Tr., Vol. VI, at 834.)  The jury was not required to find,

as FedEx now claims, that Kranson could perform the essential functions of his job, irrespective of

---

[8] Based on the evidence at trial, Kranson received a letter from Ms. Cline on May 19, 2011, stating in part that her "records indicate[d] that [he] ha[d] been on a medical leave of absence in excess of 90 days." (Tr., Vol. IV [October 11, 2012], 575:12–576:3; Trial Ex. 4.)  Although Kranson did not contact Ms. Cline in response to this letter, he understood as of May 19 that no action had been taken to eliminate his position and sent Ms. Cline an acknowledgement of her letter. (Tr., Vol. IV, 576:4–12, 577:4–13.)  On June 6, 2011, Kranson was released to return to full work as of June 13, and received another letter dated June 10 informing him that he was on a 90-day unpaid personal leave to seek a new position at FedEx. (Trial Exs. 6 & 7; Tr., Vol. IV, 578:20–579:11, 583:9–13.)  From this evidence, the jury had adequate basis to determine, for example, that the adverse employment action occurred on June 10, 2011, when FedEx informed Kranson that he was being placed on leave to find a new position.

whether they could be performed with or without an accommodation.  For this additional reason,

FedEx's first argument for judgment as a matter of law on the disability discrimination claim fails.

### ii.        Lack of Evidence of Discriminatory Intent

Next, FedEx argues that "Kranson produced no evidence that would

allow a reasonable jury to infer that Ms. Cline or Mr. Capriulo acted for the true purpose of

intentionally discriminating or retaliating against [him]."  (FedEx's Motion at 6.)[9]  According to

FedEx, Ms. Cline testified that she "neutrally applied" Policy 1-8 to Kranson.  (*See* FedEx's Motion at

7–10; *see* Tr., Vol. III, 451:10–453:2, 391:2–392:22, 463:17–464:18.)  Similarly, FedEx argues that

Plaintiff failed to produce any evidence contradicting Mr. Capriulo's testimony that he neutrally

applied the reduction-in-force policy to Kranson.  (FedEx's Motion at 9; *see* Tr., Vol. II [October 9,

2012], 290:14–291:3, 297:3–9, 297:25–298:6, 287:20–289:7.)  Based on this testimony, FedEx

concludes that the only evidence at trial showed that no FedEx actor had any discriminatory intent.

FedEx again ignores that the jury assesses credibility of the witnesses and was entitled to

believe or disbelieve any witness's testimony.  (*See* Tr., Vol. VI, at 832.)  FedEx's additional

argument that Kranson bore the burden of demonstrating "weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions" in FedEx's proffered explanations for its actions

with "specific and substantial evidence" mistakenly grafts the standard applicable to summary

judgment motions onto the trial.  (FedEx's Motion at 9.)  In a trial, the jury assesses a witness's

attributes in court, including the witness's demeanor, body language, motive, bias, and attitude.  The

jury is only required to find by a preponderance of the evidence that a claim was "more probably true

than not true" based on "all of the evidence regardless of which party presented it."  (*Id.* at 830.)  The

law does not require it to believe FedEx's witnesses.

---

[9] In addition, FedEx emphasizes that Kranson did not prove that Policy 1-8 or the reduction-in-force policy was unlawful.  The Court reiterates that in its Order Denying Plaintiff's Request for Declaratory Judgment and Finding No Violation of California Business and Professions Code Section 17200, *et seq.*, the Court held that there was insufficient evidence in the record allowing it to conclude that Policy 1-8 was unlawful as applied to any employee other than Kranson.  The Court did, however, note that the jury found that Policy 1-8 had been unlawfully applied to Kranson.  (*See* Dkt. No. 150 at 13.)

For the foregoing reasons, the Court **DENIES** FedEx's Renewed Motion for Judgment as a Matter of Law as to the claim for Disability Discrimination on these grounds.

### b.      Fourth Claim: Retaliation

FedEx argues that this Court should find that Kranson's retaliation claim fails as a matter of law because there is no evidence that any adverse action taken was done to retaliate for his taking medical leave.  In other words, FedEx asserts that Kranson did not prove that Ms. Cline or Mr. Capriulo took any adverse action because of his medical leave.  As with its arguments on the disability discrimination claim, FedEx argues that Ms. Cline and Mr. Capriulo "both intended to neutrally apply polices [*sic*] consistently" and, therefore, there is no evidence of retaliatory motive nor causation.  (FedEx's Motion at 12.)

FedEx's argument fails for the same reasons stated regarding the disability discrimination claim.  The jury was not required to believe that Ms. Cline and Mr. Capriulo "neutrally" applied Policy 1-8 or a reduction-in-force to Kranson.  The totality of the evidence, viewed in the light most favorable to Kranson, permitted the jury to conclude that FedEx took the adverse actions of displacing him from his ramp agent position and/or ultimately terminating his employment because of his disability and subsequent need for leave.  Moreover, as discussed above, evidence regarding FedEx's conduct toward Kranson in or around May or June 2011 similarly permitted a finding that it did not act in good faith with regard to applying the policies.  FedEx seems to suggest that a jury can only find a lack of good faith where witnesses actually admit to so acting.  Rarely, if ever, would evidence thus unfold.

For these reasons, the Court **DENIES** FedEx's Renewed Motion for Judgment as a Matter of Law as to the claim for Retaliation on these grounds.

### c.      Sixth Claim: Wrongful Discharge in Violation of Public Policy

FedEx asserts that judgment as a matter of law is required on Kranson's claim for wrongful discharge in violation of public policy because the loss of his job was the result of an ongoing reduction-in-force.  Noting that this claim is premised on the disability discrimination and retaliation claims, FedEx again argues that the wrongful discharge claim fails because the underlying claims fail based on FedEx's "neutral application" of the policy.  (FedEx's Motion at 12–13 (also

1   arguing that Kranson declined to accept any available positions after he was returned to work).)

2   Further, FedEx argues it was "not obligated to keep the full-time ramp agent position indefinitely or to

3   maintain the employment relationship if Kranson declined the available positions." (*Id.* at 13.)

4   Plaintiff responds that the evidence at trial showed his termination was the direct result of his removal

5   from his ramp agent position due to exceeding 90 days of leave.

6      For the reasons set forth *supra* regarding the disability discrimination and retaliation claims,

7   the Court finds sufficient evidence existed for the jury to conclude that FedEx did not neutrally apply

8   its reduction-in-force policy and that Kranson's termination was in violation of public policy.

9   Accordingly, the Court **DENIES** FedEx's Renewed Motion for Judgment as a Matter of Law as to the

10   claim for Wrongful Discharge in Violation of Public Policy on these grounds.

11      **B.      FedEx's Alternative Motion for a New Trial**

12         **1.      Legal Standard**

13      Federal Rule of Civil Procedure 59(a)(l) provides that, after a jury trial, a court may

14   grant a motion for a new trial based "on all or some of the issues . . . for any reason for which a new

15   trial has heretofore been granted in an action at law in federal court." Because "Rule 59 does not

16   specify the grounds on which a motion for a new trial may be granted," district courts are "bound by

17   those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d

18   1020, 1035 (9th Cir. 2003). Those grounds include: (1) a verdict that is contrary to the weight of the

19   evidence; (2) a verdict that is based on false or perjured evidence; (3) damages that are excessive; or

20   (4) to prevent a miscarriage of justice. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007);

21   *see Passantino v. Johnson & Johnson Consumer Products,* 212 F.3d 493, 510 n.15 (9th Cir. 2000).

22   "A new trial may be ordered to correct manifest errors of law or fact, but the burden of showing

23   harmful error rests on the party seeking the new trial." *Boston Scientific Corp. v. Johnson & Johnson*,

24   550 F. Supp. 2d 1102, 1110 (N.D. Cal. 2012) (internal quotations and citations omitted). Erroneous

25   evidentiary rulings and errors in jury instructions are also grounds for a new trial. *See Ruvalcaba v.*

26   *City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995); *Murphy v. City of Long Beach*, 914 F.2d 183,

27   187 (9th Cir. 1990).

28

United States District Court
Northern District of California

14

When a motion for a new trial is based on insufficiency of the evidence, courts must evaluate the evidence and may assess for itself the credibility of witnesses. *See Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir. 1990). A new trial should not be granted "merely because [the court] might have come to a different result from that reached by the jury." *Wilhelm v. Assoc. Container Transp. (Australia) Ltd.,* 648 F.2d 1197, 1198 (9th Cir. 1981). Rather, a new trial should be granted where, after "giv[ing] full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371–72 (9th Cir. 1987).

### 2.      Analysis

In FedEx's motion for a new trial, it asserts three grounds for requiring a retrial on the four claims for which the jury found for Kranson.[10] First, it argues that: (1) there was plain error in the jury instructions for disability discrimination, retaliation, and wrongful discharge based on *Harris*; (2) the verdict on these claims was against the clear weight of the evidence; and (3) Kranson's counsel engaged in prejudicial misconduct by repeatedly stating that Policy 1-8 was unlawful when the Court had yet to make such determination on his claim for violation of Business and Professions Code section 17200, *et seq.* and declaratory relief.

The Court first addresses FedEx's argument regarding the purported errors in the jury instructions. As the Court discussed *supra* with respect to damages, the jury's award of damages can stand alone on the third claim for Failure to Provide Reasonable Accommodation. Consistent with its arguments on the renewed motion, FedEx does not argue plain error existed in the jury instruction on this third claim. Thus, the damages verdict can stand regardless of the California Supreme Court's decision in *Harris* following the verdict in this case. At the hearing on the pending motion, the Court posed this issue to FedEx's counsel and inquired into its effect on retrying the three claims purportedly affected by *Harris*:

---

[10] FedEx does not seek a new trial on the two claims on which the jury found for FedEx, nor on the issue of damages.

United States District Court

Northern District of California

United States District Court

Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THE COURT:        Well, I want to focus on <u>Harris</u>.  So I understand you have different arguments.  But the focus of my question is the impact, the ultimate impact of <u>Harris</u>.  Even if you are right with respect to the first, fourth and sixth claims, you agree that <u>Harris</u> in no way impacts the third claim, correct?

MR. MATHEIS:        Yes, Your Honor.

THE COURT:        Okay.  So let's assume for the sake of argument that I do not find your claims with respect to the third claim to be persuasive.  Then, really, there's no point in retrying the other claims, because you're still stuck with a damages award as to the third claim, right?

MR. MATHEIS:        I think that's an accurate analysis, Your Honor.

(Transcript of Proceedings [September 17, 2013 (Dkt. No. 192)], 7:3–16.)  As to FedEx's reasons for why a new trial is warranted on the third claim for failure to provide reasonable accommodation, FedEx repeats its prior argument that a paid leave of absence is a reasonable accommodation as a matter of law, which was offered in good faith.  (*Id.*, 8:2–11.)  The Court rejects this argument based on the reasons stated in Section II.A.3, *supra*.

FedEx next argues that the jury's verdict on the second claim for Failure to Engage in the Interactive Process cannot be reconciled with the verdict on the third claim.  (*Id.*, 8:12–13.)  The Court again disagrees.  Substantial evidence at trial showed that Kranson himself never requested that FedEx make a reasonable accommodation for his physical condition such that he would be able to perform the essential duties of his job.  (Tr., Vol. IV, 573:13–574:23; *id.*, Vol. III, 490:22–491:3.)  The jury's decision to answer "no" to the second question on the verdict form for the second claim is fully reconcilable with the verdict on the third claim on this basis.  The Court is not left with the definite and firm conviction that the jury committed a mistake on this claim and finds that the jury's verdict on this claim is not against the clear weight of the evidence.  *Landes Const. Co.*, 833 F.2d at 1371–72.

With respect to the alleged prejudicial misconduct, FedEx argues that Kranson's counsel's repeated reference during closing that Policy 1-8 was unlawful requires a new trial.  "Generally, misconduct by trial counsel results in a new trial if the 'flavor of misconduct sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'"  *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002) (quoting

*Kehr v. Smith Barney*, 736 F.2d 1283, 1286 (9th Cir. 1994) (alterations in original). Absent a contemporaneous objection, where the integrity or fundamental fairness of the proceedings of the trial court is called into serious question, the court reviews for plain or fundamental error. *Hemmings*, 285 F.3d at 1192. Here, FedEx never objected. Had FedEx's counsel objected contemporaneously, the Court could have examined the alleged prejudice and admonished defense counsel or issued a curative instruction, if warranted. *Kaiser Steel Corp. v. Franc Coluccio Constr. Co.*, 785 F.2d 656, 658 (9th Cir. 1986) (holding that "the contemporaneous objection rule bar[red] th[e] claim").

FedEx effectively concedes its failure to contemporaneously object and argues that it objected to the attorney misconduct "at its earliest opportunity," which was after the Court issued its June 10, 2013 Order Denying Plaintiff's Request for Declaratory Judgment and Finding No Violation of California Business and Professions Code Section 17200, *et seq.* (Reply to Plaintiff's Opposition to Defendant Federal Express Corporation's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial ["FedEx's Reply" (Dkt. No. 180)] at 10.) In particular, it argues that until June 10, FedEx could not have known that the statements would be at odds with the Court's ultimate ruling regarding whether Policy 1-8 was unlawful. The Court disagrees that FedEx objected at its earliest opportunity. FedEx certainly knew at the time the statements were made that the Court had not yet issued any ruling on whether Policy 1-8 was unlawful or illegal. Upon hearing the statements, FedEx could have objected based on the fact that the Court had yet to make such determination and asked for a curative instruction to remedy any prejudicial effect or confusion by the jury over whether the policy was, in fact, unlawful. FedEx simply failed to do so.

Moreover, in reviewing Kranson's counsel's commentary regarding Policy 1-8 being unlawful, the Court concludes that his statements were likely to be understood as argument and/or the opinion of counsel. In fact, certain statements were explicitly qualified as such. For example, Kranson's counsel stated:

> And as you've heard these instructions and you read them in the deliberation room, ask yourself whether this policy is consistent with California law. *I submit to you it is not.* [¶] It's a violation of California law. . . . It allows them to avoid the law and that is wrong.

1   (Tr., Vol. VI, at 851–52 (emphasis supplied); *see id.* at 850–51 ("[I s]ubmit to you that's a violation of

2   the law").)  The Court is not persuaded that statements such as FedEx "ignored the law" or "avoid[ed]

3   the law and that is wrong" were plain or fundamental error that prejudiced the jury.  (*See id.* at 852,

4   908.)  In making these statements, counsel did not allude to the fact that the Court had made a finding

5   that the policy was unlawful.

6   Finally, FedEx's argument of prejudicial error is simply not persuasive in light of the fact that

7   the jury did not feel so constrained or prejudiced against FedEx as evidenced by its favorable ruling

8   on two of the six claims.  FedEx cannot have it both ways and argue that these statements tainted the

9   jury's verdict on four claims for which Plaintiff prevailed, but did not taint the verdict on the claims

10  where FedEx prevailed.  Again, the Court is not left with the firm conviction that the jury was

11  prejudiced by these comments.

12  With respect to the last ground noted, as set forth above, the weight of the evidence supports

13  the jury verdict and does not warrant either judgment as a matter of law or a new trial.  Further, even

14  if a *Harris* instruction could have impacted damages on three claims, the amount awarded as to the

15  fourth is redundant of the other three.  The parties have not requested nor is a new trial on damages

16  alone warranted.  For the foregoing reasons, the Court **DENIES** FedEx's Motion for a New Trial.

17  **C.     Kranson's Motion for Additur, or in the Alternative, for New Trial**[11]

18  Kranson seeks an order granting additur or a new trial to re-litigate the amount of emotional

19  distress damages he should be awarded.  Arguing that the jury's award of zero damages for emotional

20  distress was contrary to law and insufficient as a matter of law, Kranson concludes that "the only

21  explanation for the jury's zero damages award is that it either disregarded or misunderstood the

22  applicable jury instruction."  (Kranson's Motion at 5.)

23  Kranson identifies his own trial testimony in which he stated he felt, among other things,

24  devastated, betrayed, embarrassed, and shocked at FedEx's treatment of him.  (Tr., Vol. III, 494:17–

25  495:6.)  Kranson also testified about his depression following the termination of his employment, how

26  FedEx left a "bad taste in [his] mouth," and how he ultimately "put [his FedEx clothing] in the

27  ──────────────────────────

28  [11] The standards applicable to Kranson's motion for a new trial are set forth in Section II.B.1, *supra*.

United States District Court
Northern District of California

garage" around Christmas 2011 because he "didn't want to see anything regarding FedEx." (*Id.*, 500:3–503:4, 507:9–508:23.)  Numerous witnesses also testified Plaintiff's depression and mood following the events in question.  (*See id.*, Vol. V, 731:11–733:5 (Kranson's wife testified that "he wasn't the same person," had "[t]errible mood swings," and has "start[ed] to manage the situation better" with the help of a therapist); *id.*, Vol. III, 381:10–383:15 (Kranson's sister-in-law testified that he was hurt, wasn't himself, was short with her, and wouldn't help out with her mother as he did before).  In addition, his therapist testified regarding his clinical symptoms, such as depressed mood, difficulty focusing, sleep disruption, lack of energy, irritability, and anxiousness, and her diagnosis that Kranson was suffering from acute stress disorder characterized by emotional distress following a traumatic event.  (*Id.*, Vol. V, 703:8–704:11, 705:23–706:5, 708:1–20.)

Kranson argues, similar to how FedEx argued in its own motion, that FedEx introduced no evidence establishing that Kranson's emotional distress was "feigned or exaggerated," nor did it "seriously challenge the credibility of the three other witnesses who testified about [his] distress." (Kranson's Motion at 9.)  Based on the jury instructions, Kranson asserts that the jury was "*required* . . . to award damages for each item of harm that was caused by FedEx's wrongful conduct"[12] and the weight of the evidence clearly established that he suffered significant emotional distress.  (*Id.* at 11.) Having found that FedEx did violate FEHA on four claims and caused compensable economic harm, Kranson concludes that the award of zero damages for emotional distress was inconsistent with the jury instruction and the law.

As authority for this position, Plaintiff primarily relies on *Dodson v. J. Pac., Inc.*, 154 Cal. App. 4th 931 (Cal. Ct. App. 2007).  In that case, a jury found the defendant negligent and awarded plaintiff economic damages for injuries caused by the accident, but awarded nothing in non-economic damages.  *Id.* at 935 (also finding plaintiff had been negligent and caused 50% of his injury and, consequently, judgment was reduced by 50%).  Plaintiff filed a motion for a new trial or additur,

---

[12] Kranson points to the following instruction as requiring the jury to award emotional distress damages here: "If you decide that Tim Kranson has proved his claim against FedEx, you must also decide how much money will reasonably compensate Mr. Kranson for the harm.  This compensation is called damages.  The amount of damages *must* include an award for each item of harm that was caused by FedEx's wrongful conduct, even if the particular harm caused could not have been anticipated."  (Tr., Vol. VI, at 842 (emphasis supplied).)

United States District Court

Northern District of California

arguing that the jury's failure to compensate him for pain and suffering was inadequate as a matter of law. *Id.* The appellate court agreed that the failure to award damages for pain and suffering resulted in a verdict inadequate as a matter of law. *Id.* at 936. In this Court's view, however, the *Dodson* court specifically examined a zero award for pain and suffering where there was also proof that medical expenses were incurred as a result of defendant's negligent act. *Id.* at 937 (stating that the factual conflicts which "may justify the jury's failure to award non-economic damages—whether the plaintiff received any substantial injury or suffered any substantial pain; whether medical treatment was actually given or was given as a result of the injuries; and whether the medical treatment was reasonable or necessary—were resolved by the [*Dodson*] jury in its special verdict"). Indeed, the *Dodson* court's holding is not as broad as Kranson argues, in that it held: "A plaintiff who is subjected to a serious surgical procedure must necessarily have endured at least some pain and suffering in connection with the surgery. While the extent of the plaintiff's pain and suffering is for the jury to decide, common experience tells us it cannot be zero." *Id.* at 938 (also recognizing that awards for pain and suffering normally depend on the facts involved). *Dodson* does not require that emotional distress damages be awarded in an employment discrimination case where the jury finds discrimination.

As the Court stated *supra*, the jury was instructed that "[i]n deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe anything a witness has said or part of it or none of it." (Tr., Vol. VI, at 832.) In addition, the Court's instructions to the jury stated that it was for them to determine what amount of damages were appropriate, if any:

> Non-economic damages include past and future physical pain, mental suffering, loss of [enjoyment] of life, inconvenience, grief, anxiety, humiliation, [and] any emotional distress. *No fixed standard exists* for deciding the amount of these non-economic damages. *You must use your judgment to decide a reasonable amount based on the evidence and your common sense.* [¶] To recover for future physical pain, mental suffering, loss of enjoyment of life, inconvenience, grief, anxiety, humiliation, and emotional distress, Tim Kranson must prove that he is reasonably certain to suffer that harm.

(Tr., Vol. VI, at 843 (emphasis supplied).) While Kranson characterizes the testimony regarding his emotional distress as "poignant" and "powerful," the fact of the matter is that the jury decided, in its

United States District Court

Northern District of California

20

United States District Court
Northern District of California

judgment, that Plaintiff's psychological suffering was not compensable and/or that emotional distress damages were not appropriate. It was not required to believe what Kranson, his wife, his sister-in-law, or his therapist said. Further, as to future damages for emotional distress, while Kranson's therapist testified that he was only "maintaining" rather than improving, she also testified that his "prognosis is good." (Tr., Vol. V, 719:20–720:16.) Kranson's wife testified that her husband was "starting to manage the situation better" with the help of a therapist. (*Id.*, 732:9–21.) The jury was not presented with evidence of out-of-pocket expenses relating to damages for Plaintiff's alleged emotional harm. Based on this testimony, the jury was entitled to find that Kranson was not reasonably certain to suffer future emotional distress.

For these reasons, the Court finds that additur would be inappropriate given the facts of this case. Moreover, Plaintiff is not entitled to a new trial based on the fact that he believes the jury should have reached a different result regarding emotional distress damages. The Court cannot find, as a matter of law, that the evidence presented to the jury required them to award any amount greater than what it did on the issue of emotional distress damages. This Court is not left with the "definite and firm conviction" that the jury committed a mistake in determining that no award was necessary to compensate Kranson's emotional distress. *Landes Const. Co.*, 833 F.2d at 1371–72.[13]

Accordingly, the Court **DENIES** Kranson's Motion for Additur or, in the Alternative, for New Trial.

## III.   CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** FedEx's Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial and **DENIES** Plaintiff's Motion for Additur, or in the Alternative, for New Trial.

This Order terminates Dkt. Nos. 159 and 162.

**IT IS SO ORDERED.**

---

[13] In light of this Court's ruling, it need not address FedEx's argument that Kranson waived this objection by failing to object to the zero damages award before the jury was discharged.

Dated: October 28, 2013

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28