UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIM KRANSON,

      Plaintiff,

  vs.

FEDERAL EXPRESS CORPORATION,

      Defendant.

Case No.: 11-cv-05826-YGR

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AFTER JURY VERDICT AND GRANTING IN PART PLAINTIFF'S MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS**

Pending before the Court are Plaintiff's Motion for Attorneys' Fees After Jury Verdict ("Fee Motion" [Dkt. No. 166]) and Motion for Review of Clerk's Taxation of Costs ("Cost Motion" [Dkt. No. 186]).  These motions follow a jury trial, in which the jury found in favor of Kranson on four of six claims, and in favor of FedEx on two claims.[1]  Following the verdict, the parties filed post-trial briefing on the remaining claim for violation of California Business and Professions Code section 17200, *et seq.* ("UCL") and Plaintiff's request for a judicial declaration.  On June 10, 2013, the Court issued an Order Denying Plaintiff's Request for Declaratory Judgment and Finding No Violation of California Business and Professions Code Section 17200, *et seq.*  The Court entered Judgment in this action on July 11, 2013.  Thereafter, both parties filed additional motions seeking judgment notwithstanding the jury verdict.  FedEx filed a Renewed Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial and Kranson filed a Motion for Additur, or in the Alternative, for

---

[1] The jury found in favor of Plaintiff on his claims for: Disability Discrimination; Failure to Provide Reasonable Accommodation; Retaliation; and Wrongful Discharge in Violation of Public Policy.  The jury found in favor of FedEx on Plaintiff's claims for Failure to Engage in the Interactive Process and Failure to Prevent Discrimination or Retaliation.  Prior to trial, the Court dismissed Plaintiff's claim for violation of the California Family Rights Act ("CFRA") in connection with the parties' cross-motions for summary judgment.

United States District Court

Northern District of California

New Trial.  The Court denied these motions on October 28, 2013.

Having carefully considered the papers submitted and the pleadings in this action, the entire record in this action, the arguments of counsel, and for the reasons set forth below, the Court hereby **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees After Jury Verdict and **GRANTS IN PART** Plaintiff's Motion for Review of Clerk's Taxation of Costs.

## I.   BACKGROUND

A detailed procedural and factual background of this action can be found in this Court's Order Denying Plaintiff's Request for Declaratory Judgment and Finding No Violation of California Business and Professions Code Section 17200, *et seq.*  (*See* Dkt. No. 150.)

## II.   PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AFTER JURY VERDICT

### A.   Legal Standard

Under the California's Fair Employment and Housing Act ("FEHA"), "the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs."  Cal. Gov't Code § 12965(b).  Generally, "[a]bsent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for *all* the hours *reasonably spent* in litigating the action to a successful conclusion."  *Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (Cal. Ct. App. 2005) (citations and internal quotations omitted) (emphasis in original).  The California Supreme Court has held that in order to accomplish the legislative purpose of "assuring the availability of counsel to bring meritorious actions under FEHA, the goal of an award of attorney's fees is to fix a fee at the fair market value for a particular action."  *Id.* at 394 (citations and internal quotations omitted).  A court should exercise its discretion under Cal. Gov't Code section 12965(b) in a manner that, in the judgment of the court, will best effectuate the purposes of FEHA.  *Id.*  The underlying purpose of FEHA "is to safeguard the right of Californians to seek, obtain, and hold employment without experiencing discrimination."  *Flannery v. Prentice*, 26 Cal. 4th 572, 582–83 (2001).  At times, fixing the fee at the relevant fair market value may require the court to adjust the fees below the requested amount.  *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 985 (2010).

Both federal and California courts have adopted the lodestar method for calculating reasonable attorneys' fees.  *Chavez*, 47 Cal. 4th at 984–85.  A lodestar figure is the product of the hours counsel

United States District Court

Northern District of California

reasonably spent on the case and a reasonable hourly rate. *Greene v. Dillingham Constr. N.A. Inc.*, 101 Cal. App. 4th 418, 422 (Cal. Ct. App. 2002). In determining whether Plaintiff's claimed hours are reasonable, a court must review attorneys' time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). The Court must assess whether the hours claimed are vague, block-billed, excessive, and/or duplicative, or whether the hours in their entirety must be reduced because of limited success in the action. *Cotton v. City of Eureka, Cal.*, 889 F. Supp. 2d 1154, 1176 (N.D. Cal. 2012); *Chavez*, 47 Cal.4th at 989 (trial court should award only amount of fees reasonable in relation to results obtained). To assist the Court with this exercise of its discretion, "'[t]he fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation.'" *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995) (alteration in original) (quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)). Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness. *See Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 782–83 (Cal. Ct. App. 2002).

In calculating the lodestar amount, the Court considers any relevant factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).[2] To the extent that the *Kerr* factors are not addressed in the calculation of the lodestar, they may be considered in determining whether the fee award should be adjusted upward or downward with a multiplier, once

_____

[2] In *Kerr,* which was decided before the lodestar approach was adopted by the Supreme Court as the starting point for determining reasonable fees in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), the Ninth Circuit adopted the 12–factor test articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). This analysis looked to the following factors for determining reasonable fees: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.

the lodestar has been calculated.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1212 (9th Cir. 1986).  However, there is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d at 1262.

**B.     Arguments and Analysis Regarding Fee Award**

Kranson seeks attorneys' fees in the amount of $676,950, which reflects a lodestar of $338,475 and a multiplier of 2.0.  (*See* Dkt. No. 173.)  The fee request breaks down as follows:

| NAME | TITLE/EXPERIENCE | HOURS | RATE | TOTAL |
|---|---|---|---|---|
| Stephen Murphy | Attorney/30+ years | 224 | $750 | $168,000 |
| P. Bobby Shukla | Attorney/10 years | 301.4 | $500 | $150,700 |
| Tania Rose | Attorney/23 years | 31.5 | $600 | $18,900 |
| Monica Chinchilla | Paralegal/unknown | 7 | $125 | $875 |
| TOTAL HOURS | | **563.9** | | |
| | | | | |
| LODESTAR | | | | **$338,475** |
| MULTIPLIER (2.0) | | | | **$676,950** |

As a preliminary matter, FedEx does not dispute that Kranson is the prevailing party entitled to recover fees.  However, FedEx contends that: (1) the number of hours worked by Mr. Murphy and Ms. Shukla must be reduced by 15–20% for clerical tasks and vague or block-billed time entries; (2) the requested hourly rates are unjustified; and (3) the lodestar should be reduced by 25–30%—not enhanced—because the jury awarded Kranson significantly less than the amount he sought, Kranson overall achieved only a partial success on his claims, and the case resolved within one year of being filed and was not complicated in nature.  The Court will address each of the three categories of arguments in turn.

**1.     Hours Worked**

Kranson argues that the lodestar of $338,475 and the hours worked during the entire course of the litigation were reasonable.  He contends that eight factors support the number of hours worked.  First, the hours are justified because FedEx aggressively defended against Kranson's claims,

4

1   which necessitated taking written party discovery, depositions (both fact and expert witnesses), and

2   third-party discovery, culminating in cross-motions for summary judgment preceding trial.  Second,

3   Kranson contends that his case involved "cutting-edge issues of what constitutes reasonable

4   accommodation" and "difficulty [in] proving significant damages in addition to facing a large

5   corporate entity as a defendant."  (Fee Motion at 13.)  Third, although Kranson did not prevail on two

6   of his six claims, the theories of recovery for all six claims were based on the same facts and therefore

7   no reduction is warranted based on his unsuccessful claims.

8       Fourth, Kranson emphasizes that this action involved "prolonged litigation," which required

9   Plaintiff to file a motion for summary judgment prior to trial and to pursue a claim for declaratory

10   relief and an order from this Court finding FedEx's policy unlawful under the UCL after the verdict

11   was rendered.  (Fee Motion at 14.)  Fifth, Kranson argues that FedEx was unwilling to explore

12   settlement earnestly in this matter and therefore failed to make reasonable settlement offers.

13       Sixth, Kranson argues that the lodestar amount is reasonable because the jury trial imposed

14   significant demands on counsel and was "intensely fought."  (Fee Motion at 7, 14–15.)  The trial

15   lasted six days, during which Kranson called ten witnesses.  FedEx examined those witnesses and also

16   called its own expert economist.  Both parties moved for judgment as a matter of law during trial,

17   which the Court denied except for taking under submission Kranson's motion relating to his claims

18   under the UCL and for declaratory relief.

19       Seventh, Kranson argues that the jury's verdict supports the lodestar amount.  The jury found

20   in favor of Kranson on his claims for Disability Discrimination, Failure to Provide Reasonable

21   Accommodation, Retaliation, and Wrongful Discharge in Violation of Public Policy, although in

22   FedEx's favor on the claims for Failure to Engage in the Interactive Process and Failure to Prevent

23   Discrimination or Retaliation.  The jury awarded Kranson $40,373 in past economic losses and

24   $341,824 in future economic losses, for a total damages award of $382,197—a substantial recovery in

25   an employment discrimination case.  Finally, Kranson argues that this case required significant post-

26

27

28

5

1    trial motions, including briefing regarding the claim for violation of the UCL and request for a judicial

2    declaration.[3]

3         FedEx counters with three arguments.  First, FedEx urges the Court to reduce the number of

4    hours of work in the lodestar calculation because certain hours reflect clerical tasks performed by an

5    attorney, while other billing entries are either block-billed or too vague to determine the nature of the

6    work and whether it was reasonable.  Specifically, FedEx identifies a number of time entries by Ms.

7    Shukla reflecting clerical tasks.  In addition, it identifies particular entries by Mr. Murphy that are

8    unintelligible.[4]  FedEx argues that the appropriate deduction for the clerical tasks and block-billed or

9    vague entries is to reduce Mr. Murphy and Ms. Shukla's hours by 15–20%.

10        Second, FedEx disputes that Kranson should be awarded the lodestar amount in fees.  Rather,

11   a reduction is appropriate because Kranson achieved only limited success in this action.  He initially

12   sought over $8 million in damages, plus punitive damages, at trial and demanded $2.1 million to settle

13   before trial.  The jury's award of $382,197 computes to one-sixth of Kranson's pre-trial settlement

14   demand and one-twentieth of his initial sought-after recovery.  Moreover, FedEx emphasizes that

15   Kranson was not successful on all of his claims—he did not prevail on the UCL claim or request for a

16   judicial declaration, and the claim for violation of the CFRA was dismissed at summary judgment.

17   Based on Kranson's overall limited success, FedEx urges the Court to reduce the lodestar amount by

18   25–30%.

19        Finally, FedEx argues that the fee award for Ms. Rose and Ms. Chinchilla's services should be

20   denied.  As to Ms. Rose, FedEx asks the Court to deny her request for fees in its entirety because her

21

22   [3] Kranson does not seek fees in connection with the briefing on the UCL and declaratory relief claims.
     (Fee Motion at 8; *see also* Plaintiff's Reply Brief in Support of Motion for Attorneys' Fees After Jury
23   Verdict ["Fee Reply" (Dkt. No. 182)] at 9.)

24   [4] With the Reply, Mr. Murphy submitted a supplemental declaration clarifying the "vague" entries
25   identified by FedEx.  (Reply Declaration of Stephen M. Murphy in Support of Plaintiff's Motion for
     Attorney Fees After Jury Verdict [Dkt. No. 183] ¶ 2.)  Ms. Shukla also provided a supplemental
26   declaration responding to FedEx's argument that she seeks to recover fees for clerical tasks.  (Reply
     Declaration of P. Bobby Shukla in Support of Motion for Attorney Fees After Jury Verdict [Dkt. No.
27   184] ¶¶ 2–4 (providing explanation of legal nature of work regarding specific entries disputed by
28   FedEx).)

work was limited to Kranson's Motion for Additur, or in the Alternative, for New Trial, which this Court denied.  As to Ms. Chinchilla, FedEx requests that her fee request be denied because she did not submit a time sheet and there is no evidence of her qualifications, education, or experience in the record.  As such, FedEx asserts the Court cannot determine whether her seven hours were appropriate or excessive, nor whether they consisted of recoverable paralegal duties.[5]

As a preliminary matter, the Court will not award fees for work performed by Ms. Rose.  As Mr. Murphy states and Ms. Rose's timesheet reflects, her primary role in this matter was to research and draft Kranson's Motion for Additur, or in the Alternative, for New Trial.  Finding none of Kranson's arguments to be persuasive, the Court denied this motion in its entirety.  Having denied the motion, the Court cannot say that the amount of time expended on that motion was reasonable and deserving of an award of fees.  Moreover, the Court notes that Kranson does not seek fees for another motion which the Court denied in its entirety.   For these reasons, the Court declines to award fees for the 31.5 hours worked by Ms. Rose in this matter.

As to Mr. Murphy, the Court finds that his hours in this matter are *overall* reasonable.  Mr. Murphy's supplemental declaration provides sufficient clarification of purportedly vague time entries. The Court agrees with FedEx's argument that Mr. Murphy's entries do contain block-billing; however, the Court does not believe that—in their context—the nature of the tasks block-billed and the respective time entries are unreasonable.  For a number of the block-billed entries, the total time amounts to less than one hour.  While Mr. Murphy's billing entries could have been more thorough and detailed, the Court does not find it was unreasonable, for example, to spend 0.5 hours to "Conf[er/erence] w/ P.B. Shukla; Telecon[ference] w/ Client; Review Corresp[ondence]."  (Murphy Decl., Ex. A.)  The same is true of block-billed entries totaling more significant amounts of time.[6]

---

[5] Plaintiff argues that Ms. Chinchilla is an experienced paralegal who has worked for Mr. Murphy for four years.  The award of fees for her seven hours of work on this matter is "modest and reasonable." (Fee Reply at 8–9.)

[6] *E.g.*, 1.3 hours to "Draft inter[r]og[atories]; Review and revise Req[uests] for Prod[uction]; Telecon[ference] w/ Client"; 1.1 hours to "Conf[er/erence] w/ P.B. Shukla; Review msj; begin Drafting Ps&As"; and 4.4 hours to "Revise and revise pl[aintiff's] dec[laration] re msj; finalize msj oppo[sition] and [cross]msj" are not unreasonable amounts of time to spend on those specified tasks. (Murphy Decl., Ex. A.)

United States District Court

Northern District of California

1    Particularly with regard to the block-billed time entries leading up to and during trial, the Court finds

2    that sufficient detail has been provided regarding the nature of the tasks such that the Court is

3    confident that Mr. Murphy's work was both necessary and reasonable.

4            However, the Court notes that because it is not awarding fees to Ms. Rose regarding the

5    Motion for Additur, or in the Alternative, for New Trial, the Court finds it is appropriate to deduct any

6    work performed by Mr. Murphy on that motion as well.  The Court has identified 0.9 hours explicitly

7    related to the additur motion or work with Ms. Rose, as well as 4.8 hours of *block-billed* time

8    reflecting work on the additur motion or motion for new trial *and* the pending Fee Motion.  Because

9    the Court cannot determine the precise amount of time allocated to each block-billed task, the Court

10   finds it is appropriate to award fees for half of the 4.8 hours (or 2.4 hours) and deduct the remaining

11   2.4 hours plus the above-referenced 0.9 hours (or 3.3 hours) from Mr. Murphy's total awardable

12   hours.  Accordingly, the Court will award a total of 220.7 hours for Mr. Murphy's work as lead trial

13   attorney in this matter.  The Court declines otherwise to reduce the total number of hours worked by

14   Mr. Murphy in the lodestar calculation by 15–20%, as urged by FedEx.[7]

15           The Court also finds that Ms. Shukla's hours are *overall* reasonable.  Ms. Shukla took on

16   significant responsibilities in this matter, including but not limited to propounding discovery,

17   participating in depositions and deposition preparation, drafting motions and pre-trial filings, and

18   participating in the trial itself.  All of these tasks are ones that could be reasonably expected of an

19   associate working on a litigation matter, and the Court finds that the time entries reflect reasonable

20   amounts of time.  To the extent that FedEx complains of block-billing, the Court finds that—as with

21   Mr. Murphy—the nature of the block-billed tasks and total time entries are reasonable.  The Court

22   notes that as the time entries get larger, Ms. Shukla was working on related tasks for significant

23   projects, such as cross-motions for summary judgment and trial preparation.  Finally, the Court is

24   _____

25   [7] In addition, the Court declines to reduce the total lodestar based on what FedEx's deems to be
     Plaintiff's limited success in this action.  The Court is not persuaded that the lodestar should be

26   reduced by 25–30% because the time entries do not distinguish between successful and unsuccessful
     claims.  The evidence underlying the six claims that went to the jury was the same (as the claims all

27   arose from the same conduct), and Kranson does not seek fees relating to the post-trial motion
     regarding the UCL claim or request for judicial declaration.  (Fee Motion at 8; Fee Reply at 9.)

28   Moreover, Kranson stipulated to the dismissal of the CFRA claim at summary judgment.

satisfied with Ms. Shukla's explanations regarding why particular work was legal in nature and not merely clerical.

As to Ms. Shukla's time relating to the Motion for Additur, or in the Alternative, for New Trial, the Court has identified three entries reflecting work solely on this motion for 1.6 hours, 3.6 hours, and 5 hours—totaling 10.2 hours. The Court has also identified four entries for which—like Mr. Murphy—time has been block-billed between the additur motion or motion for new trial and the pending Fee Motion. For these entries of 4.5 hours, 0.8 hours, 7.7 hours, and 6.8 hours, the Court will award half of the hours 19.8 hours sought (or 9.9 hours). As such, the Court will deduct 20.1 hours from Ms. Shukla's total hours of 301.4 and will award fees based on 281.3 hours for her role as second chair at trial in this matter. The Court declines otherwise to reduce the total number of hours worked by Ms. Shukla, as urged by FedEx.

As to Ms. Chinchilla's seven hours of paralegal work, the Court agrees with FedEx that the best evidence to explain the nature of her work, hours, and experience would have been a declaration from Ms. Chinchilla herself. Moreover, based on the Ninth Circuit's recent opinion in *Muniz v. United Parcel Serv.*, the Court finds that an award for Ms. Chinchilla's services based on the declaration of Mr. Murphy that she performed precisely seven hours of work "under [his] supervision" would be based on hearsay.[8] (*See* Murphy Decl. ¶ 22.) Accordingly, the Court declines to award fees based on Ms. Chinchilla's services.

In sum, the Court will calculate the lodestar amount based on the following number of hours:

| NAME | TITLE | HOURS |
|---|---|---|
| Stephen Murphy | Attorney | 220.7 |
| P. Bobby Shukla | Attorney | 281.3 |

---

[8] In *Muniz*, the Ninth Circuit reversed a district court regarding a fee award for a paralegal's hours where the only declaration submitted in support thereof was from an attorney. No. 11-17282, 2013 WL 6284357, at *4–5 (9th Cir. Dec. 5, 2013). There, the attorney attested that the paralegal's hours were "based on his personal knowledge" in that "he had watched [the paralegal] reconstruct her hours using the same information [the attorney] used, and that [an] attached spreadsheet showed [the paralegal's] hours." *Id.* at *4. In interpreting said declaration to be attesting that the paralegal had provided the information to the attorney, the Ninth Circuit held that the fee award for the paralegal was based on inadmissible hearsay. *Id.* at *9 (remanding actions for determination of whether hearsay exception applied).

United States District Court

Northern District of California

### 2.     Reasonable Hourly Rates

As set forth in the chart above, Kranson's lodestar amount is based on his legal team working a total of 563.9 hours at current billing rates of $750 (Murphy), $500 (Shukla), $600 (Rose), and $125 (Chinchilla).  Kranson identifies the San Francisco Bay Area as the relevant forum community against which the requested hourly rates should be compared to determine the reasonable market value of Kranson's attorneys' services.

FedEx's argument is based on the fundamental concept that "[t]here is no evidence that a client has paid or a court has awarded Mr. Murphy, Ms. Rose, nor Ms. Shukla [their requested] hourly rates."  (Opposition to Plaintiff's Motion for Attorneys' Fees ["Fee Opposition" (Dkt. No. 177)] at 3.)  FedEx contends that the proper basis of comparison to determine reasonable hourly rates is "recent[] award[s] to plaintiff-side employment attorneys in the Northern District" in FEHA cases, which are more accurately $645 for an attorney with 44 years of experience and $230 for junior attorneys.  (*Id.* at 3–4.)[9]

Having declined an award of fees for Ms. Rose and Ms. Chinchilla, the Court will address reasonable hourly rates for: (a) Mr. Murphy; and (b) Ms. Shukla below.

### a.     Stephen Murphy

Mr. Murphy's requested rate of $750 per hour reflects over 30 years of experience as a trial lawyer.  His practice currently focuses on plaintiffs' side litigation.  He has authorized portions of employment treatises and articles published in both legal and non-legal magazines and newspapers, and belongs to a number of legal organizations.  (Declaration of Stephen M. Murphy in Support of Plaintiff's Motion for Attorney Fees After Jury Verdict ["Murphy Decl." (Dkt. No. 167)] ¶¶ 2–3.)  Mr. Murphy identifies numerous representative jury awards for employment cases tried by him in both federal and state court, ranging from (i) $385,000 to $1.7 million (plus attorneys' fees) in the Northern District of California between 2000 to 2007, and (ii) $120,000 to $6.5 million (both plus attorneys' fees) in state courts within the Northern District between 1997 to 2010.  (*Id.* ¶ 4.)

---

[9] Kranson argues that FedEx cites no authority for the proposition that the proper comparative base is "single plaintiff cases and those dealing with employment law within this district."  (Reply at 4–5 ("[C]ourts look at the full market comparable services.").)

In its Opposition, FedEx identifies only one case where Mr. Murphy was awarded fees in the Northern District and, in that case, the court awarded him $515 per hour.  (Fee Opposition at 4 (citing *Leuzinger v. County of Lake*, No. C 06-00398 SBA, 2009 WL 839056 (N.D. Cal. Mar. 30, 2009)).)  In light of the fact that recent awards for attorneys with 36–44 years of experience at $575–$600 and Mr. Murphy's past award of $515 per hour, FedEx concludes that his appropriate hourly rate is $535 per hour.[10]  (Fee Opposition at 6.)

As additional support for his $750 requested fee, Kranson submits two additional declarations from attorneys providing opinions regarding hourly rates and fee awards in the community for similar services.  Guy B. Wallace has practiced since 1993 and is a senior partner at Schneider Wallace Cottrell Brayton Konecky LLP, which focuses on class actions and complex litigation.  (Declaration of Guy B. Wallace in Support of Plaintiff's Motion for an Award of Reasonable Attorneys' Fees, Costs, and Expenses ["Wallace Decl." (Dkt. No. 170)] ¶¶ 4–5.)  Mr. Wallace's firm has handled a number of federal and state cases in the areas of race and gender discrimination, wage and hour violations, civil rights, and consumer actions, with class action litigation being a major focus of the firm.  (*Id.* ¶ 7.)  Mr. Wallace attests that the hourly rate for his services in 2013 is $725 an hour.  (*Id.* ¶ 9.)  In 2012, his hourly rate was $700 an hour.  (*Id.*)  "Numerous courts have approved" Mr. Wallace's 2012 and 2013 rates.  (*Id.*)  Mr. Wallace believes that Mr. Murphy's rate of $750 per hour is within reasonable market ranges for attorneys in the Bay Area who perform similar types of work.  (*Id.* ¶¶ 10–12.)

FedEx responds that the Wallace Declaration does not support Mr. Murphy's requested fee because Mr. Wallace's opinion is based on his experience as class counsel focusing on class action litigation, not single-plaintiffs' side employment litigation.  Further, Mr. Wallace states that his firm "seeks" $725 per hour for his services, but there is no evidence that he has been awarded this amount.

---

[10] Plaintiff responds that a rate of $535 for Mr. Murphy is unsupported in light of the cases cited by Mr. Pearl in his declaration, where no attorney with over 30 years of experience received any amount in the $500 range.  (Reply at 6.)  Moreover, his previous award of $515 per hour was received in March 2009 for a trial that occurred in 2007.  As such, FedEx's proffered market rate does not reflect the current market rate for a person of Mr. Murphy's experience.  (*See* Fee Reply at 7 (rates of $740–$850 awarded to attorneys practicing between 26 and 32 years).)

1   In addition, Mr. Wallace's firm is much larger than Mr. Murphy's firm, which requires more overhead

2   and, consequently, should result in obtaining a larger fee award.

3   The final declaration in support of Kranson's Fee Motion was submitted by Richard M. Pearl,

4   who is the principal of his own law firm within the Northern District.  (Declaration of Richard M.

5   Pearl in Support of Plaintiff's Motion for Attorney Fees After Jury Verdict ["Pearl Decl." (Dkt. No.

6   171)] ¶ 1.)  Mr. Pearl specializes in matters relating to court-awarded attorneys' fees and has served as

7   an expert witness, mediator, and arbitrator in fee disputes and related matters.  (*Id.*)  He has also

8   written extensively on court-awarded attorneys' fees.  (*Id.* ¶ 3.)  Mr. Pearl is "frequently called upon

9   to opine about the reasonableness of attorneys' fees" and has been asked to render an opinion on the

10  reasonableness of fees in this matter.  (*Id.* ¶ 1, 6.)

11  Mr. Pearl opines that "the hourly rates requested by Plaintiff's attorneys are well in line with

12  the non-contingent market rates charged for reasonably similar services by San Francisco Bay Area

13  attorneys of reasonably similar qualifications and experience."  (*Id.* ¶ 8.)  Mr. Pearl supports his

14  opinion by referencing numerous cases in federal and state courts in California wherein hourly rates

15  similar to those requested herein were approved by courts.  (*Id.* ¶ 9 (reflecting 2010–2012 rates).)

16  Most notably, Mr. Pearl references a FEHA and civil rights case filed by an individual in the Northern

17  District of California in 2012, wherein hourly rates of $750, $675, $300, and $265 were awarded to

18  attorneys with 33, 29, 6, and 4 years of experience, respectively.  *See Davis v. Prison Health Servs.*,

19  No. C 09-2629 SI, 2012 WL 4462520, at *9–10  (N.D. Cal. Sept. 25, 2012).

20  In response, FedEx argues Mr. Pearl's declaration fails to support the requested rate as his

21  supporting authorities are based on "large, multi-district antitrust litigation, class actions, appellate

22  work, and commercial litigation" and not plaintiffs' side employment actions.  (Fee Opposition at 5

23  (citing Pearl Decl. ¶ 9); *see also* Fee Opposition at 6 (arguing Mr. Pearl's exhibits do not support Mr.

24  Murphy's requested fees for the same reasons).)[11]  As to the sole case cited by Mr. Pearl involving

25  FEHA, *Davis v. Prison Health Servs.*, FedEx notes that the case actually involved a claim of

26  retaliation based on exercising First Amendment rights.

---

27  [11] Plaintiff summarily states in his Reply that "class actions do not necessarily warrant higher rates

28  since they often settle and do not require trial skills."  (Reply at 5.)

Having considered the arguments raised by the parties, the Court initially notes that the Murphy Declaration provides a lengthy list of jury verdicts personally obtained by Mr. Murphy, stating that attorney fees were awarded with each verdict but failing to specify the amount of fees or reasonable rates awarded.  Instead, Mr. Murphy states that he "believe[s] an hourly rate of $750 is appropriate for an attorney of [his] background and experience, a 1981 law school graduate, and [he] requests fees at that rate."  (Murphy Decl. ¶ 16.)  He also states that he is familiar with the customary billing rates in this district and understands his rate to be within the community norm for his services.  (*Id.* ¶ 17.)

As to the Wallace and Pearl Declarations supporting Mr. Murphy's requested hourly rate, the Court agrees with FedEx that Mr. Wallace's opinion appears to be based on his rates awarded in class actions and other complex litigation.  (*See* Wallace Decl. at pp. 1–4.)  No cited case involves an individual plaintiff asserting discrimination, although there are a number of discrimination class actions.  Similarly, the cases listed by Mr. Pearl in paragraph 9 of his declaration involved, among other things, claims for antitrust class actions, wage and hour class actions, Freedom of Information Act, and anti-SLAPP.  The cases involving disability or discrimination were also class actions.

Kranson argues that "courts look at the full market comparable services" and notes that at least one other court has rejected criticisms of Mr. Pearl's opinions as "not applicable because they were class action cases and more complex than [that] case [involving the Fair Debt Collection Practices Act]."  (Fee Reply at 5 (citing *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1009 (Cal. Ct. App. 2013)).)  However, "[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for *similar work* performed by attorneys of comparable skill, experience, and reputation."  *Chalmers*, 796 F.2d at 1210–11 (emphasis supplied).  While the various cases cited by Messrs. Wallace and Pearl provide some basis of comparison of reasonable rates for attorneys with 30+ years of experience, these rates do not take into account whether the work performed was similar in nature.[12]  Simply put, average hourly rates of big law firm

---

[12] With regard to the list of standard hourly rates for various California firms (*see* Pearl Decl. ¶ 15 regarding "Rates Charged by Other Law Firms"), these numbers, upon first glance, support the reasonableness of the requested fees.  However, Mr. Pearl does not provide any information regarding the practice areas of attorneys included in the survey, which is necessary information in order for the

partners and associates (irrespective of whether the work involved any employment law) do not provide a meaningful basis for comparison of what is appropriate for trial counsel in an employment discrimination case involving an individual plaintiff asserting claims arising from one chain of events. Nor does the $725 per hour rate of Mr. Wallace, who litigates disability civil rights and employment *class actions*, among other class actions, provide a persuasive basis to award for the requested fee award here. Finally, the Pearl Declaration fails to indicate the referenced attorneys' skill level or reputations. *Schwarz,* 73 F.3d at 908 (fee applicant has the burden to produce evidence "that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation") (citations and internal quotations omitted).

To determine a reasonable fee for Mr. Murphy, the Court believes that the best starting point is the $515 per hour that he requested (and was awarded) in 2009 in *Leuzinger*, where he served as trial counsel for an individual plaintiff in a disability discrimination case.[13] According to Exhibit B to the declaration of Kranson's expert, Mr. Pearl, partner rates in San Francisco increased 3.2% between 2011 and 2012. While the Court observes that these rates appear to reflect increases in big law firms, the Court finds that such an increase in a small firm would also be reasonable. Based on the starting point of $515 per hour in 2009 and increasing at a rate of 3.2% each year, an *approximate* reasonable rate for Mr. Murphy in 2013 would be $585.

---

Court to make a *meaningful comparison* regarding whether the work was *similar* to that of Mr. Murphy. Mr. Pearl also references surveys on legal rates, including a Valeo 2012 Halftime Report showing that the 2012 average partner and associate rates in San Francisco were $675 and $482, respectively. (Pearl Decl. ¶ 10 & Ex. B (compiling billing rates for lawyers at 550 law firms through publicly-available documents); *see also* Pearl Decl., Exs. C & F.) These articles and surveys likewise do not provide information that allows the Court to determine whether the work performed was similar in nature. If based on average billing rates for attorneys in big law firms, these quoted numbers presumably include rates for non-employment litigators and, even more dissimilarly, transactional attorneys. To the extent that Exhibits D and E do reference partners' and associates' awarded rates in employment litigation, the Court notes that the awards are not in line with Mr. Murphy's or Ms. Shukla's requested rates and it is unclear whether these cases involved class actions or individual plaintiffs.

[13] In that case, defendant did not dispute Mr. Murphy's requested rate of $515 per hour. *Leuzinger*, 2009 WL 839056, at *2.

United States District Court

Northern District of California

However, the Court also takes into consideration the recent fee award in *Davis v. Prison Health Servs.*, wherein a court in this district awarded fees of $750 and $675 to attorneys with considerable experience litigating civil rights and employment cases—both areas in which Mr. Murphy practices.  These awards were awarded to attorneys who began practicing between 1979 and 1983, whereas Mr. Murphy began practicing in 1982.

Taking together the $585 approximate number on the lower end (based on Mr. Murphy's previously-awarded rate in 2009), and the $675–$750 range on the higher end (based on amounts awarded to attorneys with similar amounts of experience to Mr. Murphy in the areas in which he practices), the Court finds that a reasonable fee for Mr. Murphy's work in this matter is $625 per hour.[14]

### b.    P. Bobby Shukla

Ms. Shukla has practiced for approximately 10 years in the area of employment law.  She graduated from the University of California, Hastings College of Law in 2003 and has been recognized as a Northern California Rising Star by the Super Lawyers magazine every year since 2009.  (Declaration of P. Bobby Shukla in Support of Plaintiff's Motion for Attorney Fees After Jury Verdict ["Shukla Decl." (Dkt. No. 168)] ¶ 2.)  Mr. Wallace believes that Ms. Shukla's rate of $500 per hour is within the reasonable market range for an attorney in the Bay Area performing similar types of work.  (Wallace Decl. ¶¶ 10–12; *see also* Pearl Decl. ¶ 8 (opining that Plaintiff's attorneys are "well in line with the non-contingent market rates charged for reasonably similar services by San Francisco Bay Area attorneys of reasonably similar qualifications and experience").

FedEx argues that Ms. Shukla's requested rate is too high and that a more appropriate rate for someone with similar experience would be $350 to $425 per hour.  FedEx also argues, as it did with Mr. Murphy, there is no evidence that Ms. Shukla has been awarded $500 by any court or paid that

---

[14] This amount is bolstered by *Hamed v. Macy's West Stores, Inc.*, in which a Northern District of California court examined rates for plaintiffs' side employment attorneys within the district.  No. CV 10-2790 JCS, 2011 WL 5183856, at *9 (N.D. Cal. Oct. 31, 2011).  There, a 1974 graduate with "considerable trial experience"—but who did not exclusively practice in employment law—was awarded $565 per hour in 2011.  *Id.*  Slight increases of this rate from 2011 to 2013 would bring the reasonable rate in 2013 to approximately $600.

amount by any client.  Rather than awarding $500 per hour, FedEx proffers that $350 per hour is appropriate.[15]

As a preliminary matter, Ms. Shukla's declaration provides no statement regarding her familiarity with billing rates in the Northern District, nor does she state that she understands her billing rates to be within the community norm for her services.  The Court notes that her declaration does not indicate that she has been awarded fees at any particular rate in the past.  The Court also notes that while Ms. Shukla does not indicate having any trial experience aside from the *Kranson* trial, her requested award of $500 per hour is two-thirds of the amount requested for Mr. Murphy, who has been practicing three times as long as Ms. Shukla and has significantly more trial experience.  As an initial matter, it appears that the $500 requested rate for Ms. Shukla is on the high side.

The Court further observes that neither party has submitted authority providing a meaningful basis of comparison for Ms. Shukla's hourly rate.  As discussed above, the vast majority of cases referenced by Mr. Pearl deal with employment class actions, at best, non-employment class actions, and rates of associates in big law firms (which do not appear to be based on employment litigation).  FedEx, on the other hand, has provided the Court with access cases arising under the Americans with Disabilities Act, which is not—in this Court's opinion—a suitable comparator for an employment litigation case.  Further, the employment cases that FedEx does reference identifies rates for attorneys of varying years, none of which align with Ms. Shukla's year of graduation.

The Court notes that in *Muniz v. United Parcel Serv., Inc.*, No. C 09-01987 CW, 2011 WL 3740808 (N.D. Cal. Aug. 23, 2011), a 2004 graduate with clerkship experience and who had worked in two private law firms and the San Francisco City Attorney's Office, was awarded $350 per hour.  *Id.* at *10 (gender discrimination case involving individual plaintiff).[16]  At that time of the decision in 2011, that attorney had seven years of experience.  In *Campbell v. Nat'l Passenger R.R. Corp.*, 718 F.

---

[15] Plaintiff responds that attorneys practicing for 10 years are regularly awarded fees in the range of $500, consistent with cases cited by Mr. Pearl.  In no case was any such attorney award any less than $430 per hour.  (Fee Reply at 7–8.)

[16] Although *Muniz* was appealed, the Ninth Circuit's recent opinion did not address the propriety of these fees.  2013 WL 6284357, at *4 (UPS "concede[d] that the district court's lodestar calculation, after the reductions noted, was within its discretion except in [the] . . . instance" of the paralegal's fee award").

Supp. 2d 1093, 1100 (N.D. Cal. 2010), the court observed that the parties' evidence indicated that a "market rate from $380 to $775 per hour [was appropriate] for experienced employment and civil rights attorneys in the Northern District."  For lesser experienced attorney in that case, the court awarded: (i) $245 per hour to a 2007 graduate who served as second chair at trial and had three years of experience; and (ii) $265 per hour to a 2006 graduate who had four years of experience.

FedEx proffers that the proper range for Ms. Shukla's work is $350 to $425 per hour, and that Ms. Shukla should receive $350 per hour.  The Court finds this award would be unreasonably low, as it is the same amount awarded to the attorney in *Muniz* who had seven years of experience in 2011.  Based on the authorities and evidence provided by the parties and taking into consideration the rate to be awarded to Mr. Murphy, the Court finds that a reasonable rate for Ms. Shukla is $425 per hour.

In sum, the Court finds that the lodestar amount in this matter reflecting hours reasonably spent on the case and a reasonable hourly rate are as follows:

| NAME | TITLE | HOURS | RATE | TOTAL PER PERSON |
|---|---|---|---|---|
| Stephen Murphy | Attorney | 220.7 | $625 | $137,937.50 |
| P. Bobby Shukla | Attorney | 281.3 | $425 | $119,552.50 |
|  |  |  |  |  |
| **TOTAL LODESTAR** |  |  |  | **$257,490** |

### 3.    Lodestar Multiplier

Kranson identifies five reasons in support of applying a 2.0 multiplier to the lodestar.  First, he emphasizes that the case was taken at great risk by his counsel, who took the matter on a contingent basis and would have received nothing if Plaintiff had not prevailed at trial.  *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) (upward adjustment to lodestar figures are intended to approximate market compensation plus "a premium for the risk of nonpayment or delay in payment of attorney fees").[17]  Mr. Murphy attests that he undertook representation of Kranson with the expectation that his risk would be compensated by a substantial lodestar enhancement.  (Murphy

---

[17] The *Ketchum* court also recognized: "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases."  24 Cal. 4th at 1133 (citations omitted).

Decl. ¶ 12 ("I was, therefore, willing to accept this cases [*sic*] with its tremendous risks.  I believed the court would recognize my efforts with an award of fees equal to the lodestar amount and a multiplier based on its recognition of my commitments, my acceptance of unusual risk, my bearing a substantial burden on a small firm and other appropriate factors.").)

Second, Kranson argues that the excellent result obtained at trial supports the multiplier.  Here, FedEx refused to make a reasonable settlement offer, and yet the jury awarded him the significant amount of $382,197.  Third, an enhancement is supported by the fact that Plaintiff's counsel's small law firm encountered a "well-funded defense, with no real settlement offered at any time in the litigation" and presented its case with "exceptional skill."  (Fee Motion at 19.)

Fourth, Mr. Murphy states that his firm was limited in its ability to accept other work while litigating this matter, which also supports an enhanced award.  (Murphy Decl. ¶ 12 ("Due to the time commitments of this case[,] I was forced to turn away other cases.").)  Finally, Kranson argues that a public interest was served by his lawsuit.  "Actions like Mr. Kranson's serve a strong deterrence purpose" and generally inure to the benefit of the public at large.  (Fee Motion at 19–20.)  Kranson's verdict will cause FedEx to "think twice" before terminating another employee on medical leave under the policy at issue in this action, discourage other employers from taking similar actions, and encourage other victims to stand up for their rights.  (*Id.* at 20.)

In light of the jury verdict and substantial damages award, Mr. Wallace agrees that a multiplier of 2.0 is reasonable, appropriate, and consistent with multipliers applied in similar cases.  (Wallace Decl. ¶ 16.)  Moreover, Mr. Pearl agrees that a multiplier of 2.0 is appropriate, specifically stating that "[i]n [his] opinion, . . . a contingent case with at least a 50% chance of not prevailing should recover a fee that it at least twice the lodestar as compensation for the attorney's risk and loan of services." (Pearl Decl. ¶ 18.)

FedEx disputes each of the characterizations of this case by Kranson in support of the multiplier.  Namely, FedEx disputes that the litigation was prolonged, noting that the case went to trial "less than [one] year after he filed the complaint."  (Fee Opposition at 10.)  FedEx cooperated in discovery, and the case itself was not document intensive, as the "entire file in this case" consisted of emails, corporate policies, and medical records.  (*Id.*)

Although Kranson argues that FedEx failed to make a reasonable settlement demand, FedEx contends that Plaintiff's demands were themselves unrealistic. Had FedEx made a higher settlement demand, it concludes that this action would still not have settled because Kranson's demands were too high. FedEx also argues that Kranson's lawsuit did not promote the interest of the public because he did not prevail on the two claims that would have served the public interest—namely, the UCL claim and request for a judicial declaration that FedEx's policy was unlawful. Accordingly, the favorable verdict he received vindicated only his own rights, and no enhancement is appropriate based on promoting the public interest.

Finally, FedEx questions whether Kranson's attorneys were truly precluded from other employment while working on this case. The attorney timesheets indicate that they likely had "plenty of time to work on other cases." (Fee Opposition at 11.) Any decision they made to turn away cases should not be rewarded with a lodestar enhancement.

As stated *supra*, the Court declines to apply a reduction to the lodestar amount based on the arguments proffered by FedEx. Accordingly, the sole remaining issue in setting the fee award is whether to apply Kranson's requested enhancement of a 2.0 multiplier. It is within this Court's discretion to apply a fee enhancement. *Ketchum*, 24 Cal. 4th at 1138 ("[T]he trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case.") (Emphasis in original).[18]

The Court initially notes that it is not persuaded by Mr. Pearl's bald statement that a "contingent case with at least a 50% chance of not prevailing should recover a fee that it at least twice the lodestar as compensation." (Pearl Decl. ¶ 18.) Mr. Pearl offers no meaningful explanation for this formula. It can be said that a party in any case has a "50% chance" of not prevailing, in which case—

_____

[18] The *Ketchum* court also noted that "when determining the appropriate enhancement, a trial court should not consider [any] factors to the extent they are already encompassed within the lodestar. . . . [A] trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation." 24 Cal. 4th at 1138–39; *see also Chalmers*, 796 F.2d at 1212 (*Kerr* factors not subsumed in initial lodestar calculation may be relevant to determination regarding lodestar enhancement).

according to Mr. Pearl—counsel will always be entitled to twice the lodestar without consideration of any other factor.

Putting aside Mr. Pearl's unsupported formula, the Court finds that the circumstances of the case do warrant some degree of enhancement. Kranson argues that his attorneys should be rewarded for the contingent risk they took in litigating his case. In *Ketchum v. Moses*, the California Supreme Court held that "contingency cases *as a class*" are entitled to special consideration when it comes to fee enhancements. 24 Cal. 4th at 1133 (emphasis in original). The court stated:

> The economic rationale for fee enhancement in contingency cases has been explained as follows: "A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans."

*Id.* at 1132–33 (citations omitted). Fee enhancements serve an important purpose of making contingency cases "economically feasible to competent private attorneys." *Id.* at 1133. Here, Mr. Murphy has attested that the likelihood of a fee enhancement played a role in his decision to take on Kranson's case. (Murphy Decl. ¶ 12.) The Court also considers the fact that counsel has been working on this matter since June 2011 without payment. The Court recognizes that two years and six months is a significant amount of time to wait to be awarded fees, particularly for a small firm.[19]

Further, despite FedEx's argument that Kranson's verdict only vindicated his own rights, the Court finds that the outcome of this action does serve a public interest of effectuating the purposes of FEHA. Kranson may not have prevailed on his UCL claim or request for a judicial declaration, but the outcome of his case serves a deterrent purpose for employers and, at a minimum, will make employers—including FedEx—more mindful of how they apply their policies. In this Court's opinion, Kranson's verdict does help preserve Californians' rights to "seek, obtain, and hold employment without experiencing discrimination." *Flannery,* 26 Cal. 4th at 582–83.

---

[19] Mr. Murphy also attested that his firm turned away other work because of this action. Although the Court considers this statement in deciding whether an enhancement is appropriate, this fact is minimally persuasive based on the lack of information regarding precisely how much work the firm turned away.

United States District Court
Northern District of California

As to Kranson's additional arguments that the excellent results are deserving of a fee enhancement and that litigation of this action required exceptional skill, the Court cannot say that "the quality of representation far exceed[ed] the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation." *Ketchum*, 24 Cal. 4th at 1139.  Nor can the Court state that the verdict obtained at trial—while certainly substantial for Kranson—was extraordinary compared to other discrimination cases.  The Court does not believe that the issues presented at trial raised novel or overly complex legal issues.   Similarly, the methods of proof employed at trial were standard for any employment litigation.  The amount of time and labor spent by counsel on this matter was in-line with what the Court would expect given the complexity of the matter, and the action did not seem more contentious or hard-fought than other litigations.  Accordingly, the Court finds that these factors are accounted for in the lodestar amount itself and that an enhancement based thereon would be inappropriate.

Based on the factors referenced above supporting a fee enhancement, the Court finds that a multiplier of 1.5 is appropriate in this matter.  Accordingly, the Court awards Plaintiff's counsel a total award of attorneys' fees as follows:

| NAME | TITLE | HOURS | RATE | TOTAL PER PERSON |
|---|---|---|---|---|
| Stephen Murphy | Attorney | 220.7 | $625 | $137,937.50 |
| P. Bobby Shukla | Attorney | 281.3 | $425 | $119,552.50 |
|  |  |  |  |  |
| **TOTAL LODESTAR** | | | | **$257,490** |
| **MULTIPLIER** | | | | **1.5** |
| **TOTAL AWARD OF ATTORNEYS' FEES** | | | | **$386,235** |

United States District Court

Northern District of California

III.   **PLAINTIFF'S MOTION FOR REVIEW OF CLERK'S TAXATION OF COSTS**

Plaintiff filed his Bill of Costs in this matter on August 7, 2013, seeking $26,990.98 in costs. (Dkt. No. 158.)  The Clerk of this Court entered its Taxation of Costs on September 4, 2013, disallowing $18,307.91 of Plaintiff's costs and allowing $8,683.07.  (Dkt. No. 185.)  Plaintiff argues that three costs should be allowed.

First, Plaintiff seeks $2,410.20 for trial transcripts under Civ. L.R. 54-3(b)(3), which provides that "[t]he cost of other transcripts is not normally allowable unless, before it is incurred, it is approved by a Judge or stipulated to be recoverable by counsel."  (*See* Cost Motion at 2.)  FedEx does not oppose the taxation of costs for these transcripts because the Court ordered the parties to obtain the transcripts.  (Opposition to Plaintiff's Motion for Review of Clerk's Taxation of Costs ["Cost Opposition" (Dkt. No. 188)] at 2.)  Accordingly, the Court **AWARDS** Plaintiff costs of $2,410.20 for trial transcripts.

Second, Plaintiff seeks $1,919.45 for videos of depositions and other deposition-related costs based on Civ. L.R. 54-3(c)(1), which provides that "[t]he cost of an original and one copy of any deposition (including videotaped depositions) taken for any purpose in connection with the case is allowable."  Kranson initially notes that it is unclear how the Clerk arrived at the precise $1,919.45 amount that it struck.  Plaintiff assumes the Clerk disallowed the costs of video depositions and argues that $1,477.25 for five deposition videos should be awarded, along with other deposition costs which would total over the disallowed $1,919.45.

FedEx responds that costs for videos and transcripts of a deposition cannot both be recovered absent a showing that both were necessary—which Kranson has not shown.  FedEx also argues "the video clips that Kranson played over-and-over again at trial were used to try and establish that FedEx failed to engage in the interactive process; a claim on which FedEx prevailed."  (Cost Opposition at 3.)  The Court rejects this self-serving characterization.  The Court agrees with Plaintiff that a party cannot simply get videotapes without actual transcripts.  As to Plaintiff's costs for condensed and ASCII Disk electronic versions of depositions, the Court finds the fees $236 are reasonable and not superfluous, as FedEx argues.  The Court sees benefits to receiving both versions of the transcripts and will not penalize Plaintiff for electing to obtain both versions, which ultimately aided in

1   Plaintiff's presentation of evidence at trial.  (*See* Plaintiff's Reply Brief in Support of Motion for

2   Review of Clerk's Taxation of Costs ["Cost Reply" (Dkt. No. 189)] at 3.)  The Court also finds that

3   the costs associated with shipping and handling fees ($145.25) and the parking fee for the

4   videographer ($96) are reasonable.  Accordingly, the Court **AWARDS** Plaintiff the requested $1,919.45

5   for deposition-related costs that was disallowed by the Clerk.

6        Finally, Kranson seeks $13,425 in expert witness fees, which the Clerk disallowed based on

7   Civ. L.R. 54-3(e).  This rule provides that "[p]er diem, subsistence and mileage payments for

8   witnesses are allowable to the extent reasonably necessary and provided for by 28 U.S.C. § 1821.  No

9   other witness expenses, including fees for expert witnesses, are allowable."  Kranson contends that

10  *under FEHA*, "the court, in its discretion, may award to the prevailing party, including the

11  department, reasonable attorney's fees and costs, including expert witness fees."  Cal. Gov't Code §

12  12965(b).  Further, he argues that the Ninth Circuit has held that expert witness fees are recoverable

13  even where the Local Rules otherwise govern the procedure for filing a bill of costs.  (Cost Motion at

14  4 (citing *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991).)

15       FedEx responds that reimbursement of expert witness fees is a procedural matter governed by

16  federal law in diversity cases.  "[F]ederal law allows a defendant to recover only forty dollars per day

17  per witness."  *First Nat. Mortgage Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1058, 1070 (9th Cir. 2011)

18  (citing 28 U.S.C. § 1821(b)).  Further, FedEx argues that *Bouman* is inapposite, as the court in that

19  case awarded expert witness fees as part of a motion for attorneys' fees, not a motion to tax costs.  *See*

20  *Bouman*, 940 F.2d at 1237.

21       The Court notes that "[i]n diversity cases, federal courts may award costs pursuant to a state

22  statute, so long as that statute does not conflict with federal law."  *Muniz*, 2011 WL 3740808, at *15

23  (citing *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1176–77 (10th Cir. 2000)).  Here, the

24  applicable rule in this district—which neither party asserts is inapplicable—provides that "[n]o other

25  witness expenses, including *fees for expert witnesses*, are allowable."  Civ. L.R. 54-3(e) (emphasis

26  supplied).  This explicit exclusion conflicts with the FEHA provision permitting an award of expert

27  witness fees.  To the extent that Kranson characterizes *Bouman* as permitting recovery of expert

28  witness fees in a FEHA case "even where the federal Local Rules otherwise govern the procedure for

United States District Court
Northern District of California

filing a bill of costs" (Cost Reply at 4), the Local Rule at issue in that case imposed a deadline for filing a bill of costs. *Bouman*, 940 F.2d at 1237.  The Ninth Circuit's opinion does not indicate that the Local Rule otherwise excluded the costs at issue, as the Northern District Local Rule does.

Because the Northern District Civil Local Rule explicitly excludes expert witness fees from being allowable as costs and Kranson did not request such expert witness fees as part of his Fee Motion, the Court **DECLINES** to award Plaintiff the requested $13,425 in expert witness fees.

In sum, the Court **GRANTS IN PART** Plaintiff's Motion for Review of Clerk's Taxation of Costs and **AWARDS** additional costs in the amount of **$4,329.65**.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees After Jury Verdict and **GRANTS IN PART** Plaintiff's Motion for Review of Clerk's Taxation of Costs.  Plaintiff is hereby **AWARDED** **$386,235** in attorneys' fees and an additional $4,329.65 in costs.  In sum, **$13,012.72** in costs are taxed against FedEx.

This Order terminates Dkt. Nos. 166 and 186.

**IT IS SO ORDERED.**

Dated: December 11, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**